## UNITED STATES v. ROGDE et al.

### (District Court, D. South Dakota, S. D.   April 22, 1914.)

1. PLEADING (§ 217*)—DEMURRER—NATURE AND OFFICE.
   Under the South Dakota practice a demurrer searches the whole record and relates back to the first defective pleading.
   
   [Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 537, 540–548; Dec. Dig. § 217.*]

2. POST OFFICE (§ 7*)—POSTMASTERS—STATUS.
   In conducting the Post Office Department the United States is engaged in discharging a governmental function, and all persons or corporations engaged in the carriage or delivery of the mail by authority of the United States, conferred by contract or general laws, are public agents or instruments used by it in the discharge of such function.
   
   [Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 7–14; Dec. Dig. § 7.*]

3. OFFICERS (§ 118*)—LIABILITY OF PUBLIC OFFICERS—RESPONSIBILITY FOR DEPUTIES OR ASSISTANTS.
   A public officer or agent, provided he has exercised ordinary care to select competent subordinates, is not responsible for the misfeasance or positive wrongs, or for the nonfeasance or negligence or omissions of duty of his subagents or servants, or other persons properly employed by him in the discharge of his official duty.
   
   [Ed. Note.—For other cases, see Officers, Cent. Dig. § 195; Dec. Dig. § 118.*]

4. POST OFFICE (§ 7*)—POSTMASTERS—LIABILITY ON BONDS—LOSS OF REGISTERED MATTER.
   By Postal Regulations 1902, § 864, a postmaster is made liable "for the wrong delivery, depredation upon, or loss of any registered letter or par-

cel while in his custody, if such wrong delivery, depredation, or loss be
due to, negligence or disregard of the regulations"; but neither under the
statutes nor regulations is he made an absolute insurer of mail while in
his custody, and a postmaster is not responsible for the loss of a registered
package, which in the usual course came into the possession of a sworn
clerk in his office, not appointed by him, but in the classified civil service,
without his knowledge, and which was lost or stolen therefrom without
his negligence or wrongdoing, or disregard of the regulations.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 7–14; Dec.
Dig. § 7.*]

At Law. Action by the United States against Peter J. Rogde, H.
W. Kittredge and Fanny Pearson, as heirs and devisees of Alfred B.
Kittredge, deceased, Thomas McKeon, Peter F. Thompson, William
L. Baker, Herman C. Freese, George W. Abbott, Francis Hyde, and
Porter P. Peck. On demurrers to answers. Demurrers overruled, and
judgment for defendants.

Robert P. Stewart, U. S. Dist. Atty., of Deadwood, S. D., and Ed-
mund W. Fiske, Asst. U. S. Dist. Atty., of Sioux Falls, S. D., for
plaintiff.

Aikens & Judge, R. D. Kittredge, and E. R. Winans, all of Sioux
Falls, S. D., for defendants.

ELLIOTT, District Judge. Plaintiff brings this action in this court
against the defendant Rogde, as principal, and his codefendants, as
sureties, upon his official bond, for the purpose of recovering $10,000
and interest by reason of the facts set forth in the complaint herein
as follows:

"The United States of America, plaintiff herein, appearing by its duly au-
thorized attorney, Robert P. Stewart, complains and alleges:

"I. That this action is brought and instituted by and under the direction
of the Attorney General of the United States.

"II. That the defendants Peter J. Rogde, Thomas McKeon, Peter F.
Thompson, William L. Baker, Herman C. Freese, George W. Abbott, Francis
Hyde, and Porter P. Peck are residents of Minnehaha county, South Dakota,
and the said defendants are residents, citizens, and inhabitants of the South-
ern division of the said district of South Dakota.

"III. That the defendants H. W. Kittredge and Fannie Pearson are non-
residents of the said district of South Dakota.

"IV. That on the 21st day of June, A. D. 1910, the above named Peter J.
Rogde was duly appointed postmaster of the United States post office at
Sioux Falls, South Dakota, and thereafter did duly execute the prescribed
oath of said office and did duly qualify as such postmaster, and was duly
commissioned as such by the proper authorities of the United States on the
29th day of June, A. D. 1910, and thereupon entered upon the discharge of
his duties as said postmaster, and then became, and was at all times mention-
ed in this complaint, and now is, such postmaster.

"V. That on the 25th day of June, A. D. 1910, the defendants Peter J.
Rogde, Thomas McKeon, Peter F. Thompson, William L. Baker, Herman C.
Freese, George W. Abbott, Francis Hyde, and Porter P. Peck, together with
Alfred B. Kittredge, now deceased, did execute and deliver to the plaintiff a
certain bond, as required by section 3834, Revised Statutes [U. S. Comp. St.
1901, p. 2610], which said bond so executed by said defendants and said Al-
fred B. Kittredge, deceased, was in the following words, figures, characters,
and letters, to wit:

" 'Bond.

" 'Know all men by these presents that we, Peter J. Rogde, of Sioux Falls, in the county of Minnehaha, state of South Dakota, as principal, and Alfred B. Kittredge, Sioux Falls, South Dakota, Thomas McKeon, Sioux Falls, South Dakota, Peter F. Thompson, Sioux Falls, South Dakota, William L. Baker, Sioux Falls, South Dakota, Herman C. Freese, Sioux Falls, South Dakota, George W. Abbott, Sioux Falls, South Dakota, Francis Hyde, Sioux Falls, South Dakota, and Porter P. Peck, Sioux Falls, South Dakota, as sureties, do hereby bind ourselves, our heirs, executors, and administrators, jointly and severally to pay to the United States of America the sum of fifty thousand dollars ($50,000).

" 'In witness whereof we have hereunto subscribed our names and affixed our seals this twenty-fifth day of June in the year one thousand nine hundred and ten.

" 'Whereas, the above-bound Peter J. Rogde was on June 21, 1910, appointed postmaster at Sioux Falls aforesaid, and has duly executed and subscribed the prescribed oath of office:

" 'Now the condition of this obligation is that if the said Peter J. Rogde shall faithfully discharge all the duties and trusts imposed on him either by law or by the regulations of the Post Office Department, and shall perform all duties as fiscal agent of the government imposed on him by law or by regulation of the Treasury Department made in conformity with law, then this obligation shall be void; otherwise, of force.

| | |
|---|---|
| " 'Peter J. Rogde. | [Seal.] |
| " 'Alfred B. Kittredge. | [Seal.] |
| " 'Thomas McKeon. | [Seal.] |
| " 'Peter F. Thompson. | [Seal.] |
| " 'William L. Baker. | [Seal.] |
| " 'Herman C. Freese. | [Seal.] |
| " 'George W. Abbott. | [Seal.] |
| " 'Francis Hyde. | [Seal.] |
| " 'Porter P. Peck. | [Seal.] |

" 'Signed and sealed in the presence of:
   " 'Harry R. Barton, Sioux Falls, S. D.
   " 'Edna Dixon, Sioux Falls, S. D.'

"That the said sureties did duly justify, which justification was indorsed on said bond, and thereafter, and on the 29th day of June, 1910, and prior to the issuance of the commission of the said Peter J. Rogde as postmaster aforesaid, said bond was accepted by the postal authorities of the United States.

"VI. That among other covenants said bond was conditioned 'that if the said Peter J. Rogde shall faithfully discharge all the duties and trusts imposed on him, either by law or by the regulations of the Post Office Department, and shall perform all duties as fiscal agent of the government imposed on him by law or by regulation of the Treasury Department made in conformity with law, then this obligation shall be void; otherwise, of force.' That under the provisions of section 810 of the Postal Laws and Regulations of 1902 the Post Office Department of the United States imposed upon all postmasters the following duty and trust with respect to registered mail matter: 'The postmaster will be held accountable for all registered matter coming into his post office, and he must take such precautions as may be necessary to safeguard it.'

"VII. That the said defendant Peter J. Rogde was such postmaster of the United States at Sioux Falls, in the state of South Dakota, and in charge of said post office and engaged in the performance of his said duties, on the 19th day of September, A. D. 1911, at 7 o'clock a. m. That there was received at said time by the said defendant Peter J. Rogde, as such postmaster, at the said United States post office at Sioux Falls, in the state of South Dakota, a certain United States registered parcel numbered ninety-three thousand

five hundred and three (93,503), which had been duly registered by the United States post office establishment at the United States post office, at Minneapolis, Minnesota, and had been mailed in said United States post office at Minneapolis, Minnesota, with the postage and registry charges prepaid thereon, on the 18th day of September, A. D. 1911, by the Northwestern National Bank, a corporation duly established and doing a banking business at Minneapolis, Minnesota, addressed to the Sioux Falls Savings Bank, Sioux Falls, South Dakota. That said registered parcel had been transported and carried from Minneapolis, Minnesota, to said Sioux Falls, South Dakota, by means of the United States post office establishment. That said registered parcel then and there contained currency and bank notes of sundry and divers denominations, lawful money of the United States, to the amount and of the value of ten thousand ($10,000.00) dollars. That said registered parcel of the amount and value aforesaid was then and there received by said defendant Peter J. Rogde, and came into the possession and custody of him, the said Peter J. Rogde, in his official capacity as such postmaster of the United States at Sioux Falls in the state of South Dakota.

"VIII. That the said plaintiff, for assigning a breach of said bond, alleges that the said defendant Peter J. Rogde failed, neglected, and did not faithfully discharge and perform all the duties and obligations imposed upon him and required of him by the laws of the United States and by the rules and regulations of said United States Post Office Department and the condition of said bond, in that the said postmaster, the defendant Peter J. Rogde, unlawfully failed and refused, and still unlawfully fails and refuses, to account and respond for said registered parcel so received by him as aforesaid, of the value aforesaid, to the United States, when requested heretofore so to do by the proper officers of the United States, and has unlawfully failed and refused, and still unlawfully fails and refuses, to deliver said registered parcel to the said addressee, Sioux Falls Savings Bank, Sioux Falls, South Dakota, or to any one for the said addressee, although the said addressee has heretofore demanded said registered parcel from the said defendant Rogde. That said addressee has never received said registered parcel, nor any part of the sum contained therein, nor has any one received the same for said addressee.

"IX. That on the 17th day of February, 1912, demand was made by the plaintiff upon said defendant Peter J. Rogde for the sum of ten thousand ($10,000.00) dollars, which was, and is, the value of said registered parcel, and demand was heretofore made, on the 17th day of February, 1912, by the plaintiff upon the defendants Thomas McKeon, Peter F. Thompson, William L. Baker, Herman C. Freese, George W. Abbott, Francis Hyde, and Porter P. Peck for the payment of the sum of ten thousand ($10,000.00) dollars, and said defendants and each of said defendants has refused and still refuses to make payment of said amount to plaintiff.

"X. That one of the sureties on said bond, Alfred B. Kittredge, after the execution thereof died, and his estate has been duly probated in the county court of Minnehaha county, South Dakota, and, by the terms of the will and the decree of distribution entered in said probate court, property of a value exceeding $25,000.00 belonging to the estate of said Alfred B. Kittredge was vested in the defendants H. W. Kittredge and Fannie Pearson, and each of them.

"XI. That the said two last named defendants are now in possession of said property belonging to said estate. That the said estate has been fully closed in said probate court and the executors thereof discharged.

"XII. That by reason of the foregoing facts and premises there is due and owing to the plaintiff from the defendants above named, and each of them, the sum of ten thousand dollars ($10,000.00), with interest thereon from February 17, A. D. 1912, at the rate of 7 per cent. per annum, no part of which has been paid.

"Wherefore plaintiff demands judgment that it have and recover of and from the defendants, and each of them, the sum of ten thousand dollars ($10,000.00), with interest thereon at the rate of 7 per cent. per annum from February 17, A. D. 1912, besides its costs and disbursements herein incurred."

To this complaint the defendant Rogde answered as follows:

"The above-named defendant, Peter J. Rogde, for his answer to the complaint in the above-entitled action alleges:

"I. Denies each and every allegation, statement, and charge therein contained not hereinafter specifically admitted.

"I½. Admits paragraphs I, II, III, IV, V, and so much of paragraph VI as refers to the conditions of the bond, and that section 810 of the Postal Laws and Regulations of 1902 contains the words quoted in said paragraph as forming a part thereof, and so much of paragraph VII as reads: 'That the said defendant Peter J. Rogde was such postmaster of the United States at Sioux Falls in the state of South Dakota and in charge of said post office and engaged in the performance of his said duties on the 19th day of September, A. D. 1911;' also so much of paragraph IX as reads: 'That on the 17th day of February, A. D. 1912, demand was made by the plaintiff upon said defendant Peter J. Rogde, for the sum of ten thousand ($10,000) dollars,' and that he 'refused and still refuses to make payment of said amount to plaintiff'; also paragraphs X and XI thereof.

"II. Specifically denies that he personally received the registered parcel referred to in paragraph VII as No. 93,503, but alleges that a parcel so numbered and addressed to the Sioux Falls Savings Bank, Sioux Falls, South Dakota, was, according to the records of the said post office at Sioux Falls, received at said office from train No. 83, running from Worthington, Minnesota, to Mitchell, South Dakota, on the Chicago, St. Paul, Minneapolis & Omaha Railway, at about the hour alleged in the complaint, and that said registered parcel was sent from Minneapolis, Minnesota, on the 18th day of September, 1911, which said record was made by a government postal employé in the classified civil service, who was at that time in charge of incoming registered mail in said post office, and who was duly sworn according to law and the rules and regulations of the Post Office Department of the United States.

"That what is contained in this paragraph is all the knowledge and information this defendant has concerning the receipt of said registered parcel No. 93,503.

"III. As to whether said registered parcel No. 93,503 contained the sum of $10,000 in currency and bank notes, as therein alleged, or any other sum, more or less, he has no knowledge or information sufficient to form a belief.

"IV. Specifically denies paragraphs VIII and XII thereof, but admits that the Sioux Falls Savings Bank, the addressee of the registered parcel No. 93,503, did on the 19th day of September, 1911, present to the clerk then having charge of the delivery of registered mail at the post office at Sioux Falls a notification card of the receipt of said registered parcel and asked for the same, but that defendant was unable to deliver the same for the reasons hereinafter stated.

"V. Further alleges that the reason why defendant did not and could not deliver to the addressee the registered parcel No. 93,503, upon request or demand as stated in paragraph IV hereof, was that the said parcel had then been either wrongly delivered or lost, or had then been stolen by some person or persons to this defendant unknown, if it had in fact been received as disclosed by the records of the post office referred to in paragraph II hereof.

"That after the wrong delivery, loss, or theft of said registered parcel No. 93,503 referred to in the complaint was discovered and reported to him, this defendant promptly notified the proper Post Office Department officials of the loss or theft of such parcel as required by post office laws and regulations then in force. That immediately thereafter post office officials charged with the duty of examining into such matters proceeded to investigate such wrong delivery, loss, or theft, in which investigation this defendant participated and rendered such service as was in his power, and if it has been determined who the responsible parties were, or if the said parcel or its contents, in whole or in part, has been recovered, this defendant has no knowledge thereof.

"VI. Further alleges that on the 19th day of September, A. D. 1911, there

was in force the following regulation of the Post Office Department of the United States, which said regulation is designated as section 864 of the Postal Laws and Regulations of July, 1902, to wit: 'Postmasters will be held personally responsible by the Post Office Department for the wrong delivery, depredation upon, or loss of any registered letter or parcel while in their custody, if such wrong delivery, depredation, or loss be due to negligence or disregard of the regulations. They are also liable on their bond for any damage resulting to the department on account of such wrong delivery, depredation, or loss.'

"That said section 864 is a part and parcel of subtitle VI of Title Five, having reference to the 'Registry System,' and is classified under the subtitle of 'Delivery of Registered Matter,' whereas section 810 of said Postal Laws and Regulations (a portion of which is copied into paragraph VI of the complaint herein) is contained in subdivision II of said Title Five, 'Registry System,' under the subtitle of 'Preparation and Dispatch of Registered Matter,' and contains in addition to the language quoted in said paragraph VI of the complaint, and preceding the same, the following: 'All registered matter must be kept separate from ordinary matter, and properly protected from accident or theft. No unauthorized person should be permitted to have access to the place where registered matter is kept; and all persons employed in a post office who handle registered matter must be duly sworn.'

"VII. Further alleges that he did not either wrongly deliver, take, or appropriate, or convert to his own use, lose, or commit any depredation upon said registered parcel No. 93,503 or any of its contents, and that he was not, with respect to said registered parcel or its contents, either in its receipt, protection, or delivery, nondelivery, depredation, or loss, guilty either of negligence or/disregard of the regulations of the Post Office Department of the United States, but that he was free from negligence and in all respects regarded the regulations aforesaid.

"VIII. Further alleges that the post office at Sioux Falls in the state of South Dakota was at all the times mentioned in the complaint an office of the first class, and that the employés therein, who were in charge of said registered parcel No. 93,503 and all other registered mail, as well as all other employés therein except the assistant postmaster, were in the classified civil service, and were all duly sworn as such employés, and under personal bond to the government of the United States as such employés, as required by law and the rules and regulations of the Post Office Department. That the said employés who were in charge of said registered parcel No. 93,503 and other registered mail had been in the classified civil service as aforesaid, and employed in said post office as clerks for many years prior to September 19, 1911, and prior to the appointment of this defendant as such postmaster; that they were familiar with the laws, rules, and regulations of the Post Office Department for the treatment and handling and care of registered mail. And this defendant had no reason to doubt their familiarity with or knowledge of such laws, rules, and regulations, nor their competency, reliability, fidelity, honesty, or integrity, but, on the contrary, he believed them competent, reliable, honest, and trustworthy.

"IX. Further alleges that plaintiff is not the real party in interest in the subject-matter of this action, that plaintiff has not been damaged on account of any of the facts set forth in the complaint herein, and further in this regard alleges upon information and belief, and charges the truth to be:

"(a) That the sender of the registered parcel No. 93,503 has suffered no damage on account of the facts set forth in the complaint herein, for the reason that said sender was protected by a policy of insurance, issued to it by the Marine Insurance Company, or some other insurance company, without the knowledge, acquiescence, or consent of this defendant, in consideration of an agreed premium or compensation, duly paid to it for its safe delivery, to the full extent of the value of the contents of said registered parcel, and has been fully reimbursed by such insurance company for the failure of delivery of the same to the addressee thereof.

"(b) That he is informed and believes, and charges the truth to be, that the addressee of the registered parcel No. 93,503, referred to in the complaint,

has, because of the facts in subdivision 'a' of this paragraph alleged, suffered no damage on account of the facts set forth in the complaint herein.

"(c) Further alleges that neither the sender nor the addressee of said registered parcel No. 93,503, referred to in the complaint, has ever made any claim or demand against defendant on account of the nondelivery to said addressee of said parcel.

"(d) Further alleges upon information and belief, and charges the truth to be, that the sender of said registered parcel No. 93,503, referred to in the complaint, would not have transmitted through the United States mail said parcel, had it not been for the security afforded them by the insurance hereinbefore referred to and the inducement of a less cost for such insurance and transmission than it would have been obliged to pay to a common carrier.

"Wherefore defendant demands judgment: . (1) For the dismissal of the complaint on its merits; (2) for his costs and disbursements herein."

The rest of the defendants also filed an answer in no respect substantially differing from that of the defendant Rogde.

The plaintiff thereupon filed demurrers to the separate answers of the defendant Rogde, and his codefendants, upon the ground that said answers do not state facts sufficient to constitute a defense.

[1] The plaintiff, by filing a demurrer to the answer, admits all facts stated in the answer that are well pleaded, and in the light of the position of counsel for the plaintiff, as well as for the defendant, the determination of the real issue involves also a determination of whether or not the complaint in this action against these defendants states facts sufficient to constitute a cause of action. Under the practice recognized in this state a demurrer searches the whole record and relates back to the first defective pleading. Clay County v. Simonsen, 1 Dak. 403, 46 N. W. 592; Tribune Printing & Binding Co. v. Barnes, 7 N. D. 591, 75 N. W. 905.

It was conceded by counsel for plaintiff upon the oral argument that it was the intent and purpose of the plaintiff, in its complaint, to charge the defendant with responsibility for the loss of the registered package described in the complaint, eliminating any and all allegations of negligence on the part of the defendant Rogde, as postmaster.

It is further claimed by the plaintiff that the various elements entering into the affirmative allegations of defendants' answers herein constitute no defense, and that the postmaster is in effect an absolute insurer of all mail, whether registered or otherwise, and that he is absolutely liable upon his bond for a failure to deliver mail to the addressee upon demand, and that such liability is absolute, saving only the act of God and the public enemy; that the execution of the bond set forth in the complaint herein superimposes upon the implied contract of bailment an express contract, which carries with it a greater liability, and that greater liability, in so far as material here, is the absolute duty to deliver all mail coming into his possession, to the addressee upon demand.

The defendant contends: (1) That it being admitted by plaintiff's demurrer that defendant is not a wrongdoer, and it being further shown that there is no allegation of his wrongdoing in the complaint, that therefore the possession of the mail in the Post Office Department at the post office in Sioux Falls, S. D., was not disturbed by him,

214 F.—19

nor is it claimed that he either destroyed or converted the registered letter. (2) That this action is brought in behalf of the insurance company, who has neither a legal nor moral right to recover damages against the defendants or either of them. (3) That a fair interpretation of the obligations of the defendant Rogde as postmaster of the city of Sioux Falls, S. D., gathered from the statutes of the United States, the postal laws, or rules and regulations promulgated pursuant to law, and the bond set forth in the complaint herein, does not evidence an intent on the part of the Post Office Department to impose any such liability upon the defendant Rogde, or his bondsmen, either by law or by contract.

This case, therefore, depends upon the answer to the one question of whether or not this defendant Rogde, as postmaster, under the provisions of his bond, the laws of the United States, and the regulations of the Post Office Department, became an absolute insurer of all mail matter that came into his hands, whether registered or ordinary mail matter, because it is conceded that there is no difference in the liability of the postmaster as to the different classes of mail, unless it be to the amount that the government is liable upon a registered package, and that has been eliminated in this case as the defendant, rather than contest that feature, offered to pay to the government $50, the maximum amount the government insures to the sender of registered packages.

There is a dearth of decisions upon the question presented here, and barring the case of Griswold v. United States, which will be hereafter referred to, there is no decision directly in point. There are well-settled principles of law which I believe must determine the rights of the parties to this litigation, upon the facts admitted in the pleadings.

The defendant Rogde was a public agent of the United States in relation to the delivery of the mail, for the reason that the Constitution of the United States conferred upon it the power to establish post offices and post roads, and this power was granted by the people as one of the sovereign powers to be exercised by the general government exclusively. By virtue of this grant of power the United States has always, through its Post Office Department, assumed exclusive charge of the carriage and delivery of the mail for the benefit of all the people. In doing so the United States is beyond question engaged in the discharge of a governmental function. All persons or corporations who are engaged in the carriage or delivery of mail by the authority of the United States, conferred by contract or general laws, are but the instruments used by it to discharge this function. Bankers' Mutual Casualty Co. v. Minn., St. P. & S. S. M. Ry. Co., 117 Fed. 434, 439, 54 C. C. A. 608, 65 L. R. A. 397.

[2] What are the liabilities of public agents? To this question, under the authorities, there can be but one answer. A public officer or agent, provided he has exercised ordinary care to select competent subordinates, is not responsible for the misfeasances or positive wrongs, or for the nonfeasances or negligences or omissions of duty, of his subagents or servants, or other persons properly employed by or under him in the discharge of his official duties. It seems to me that the

foregoing is directly applicable to the situation pleaded by the defendants and admitted by the demurrer of the plaintiff.

[3] It is conceded by all parties that it is the intent to charge no negligence of any kind or·character, no wrongdoing upon the part·of Postmaster Rogde, and, considering the facts as pleaded by the answers, the package came into the post office at Sioux Falls, was registered, never was seen by Postmaster Rogde, he has no knowledge that it ever came, except that the record kept in the regular way showed such a package had been received, and the fact further appears that it was stolen or lost, and whether it was lost or stolen by or through the acts of some one employed in the post office or by trespassers is not known. It is only conceded that the defendant postmaster was not guilty of any negligence or wrongdoing in connection therewith, unless he be a wrongdoer under the provisions of his bond, by simply failing to deliver such package to the addressee upon demand, though it is admitted that he in no way, directly or indirectly, in any manner contributed to the larceny of the package.

The answer to the above question as to the liability of the defendants herein involves two propositions, as follows:

1. There is no common-law liability on the part of the defendant postmaster for property lost or taken from him without negligence or wrongdoing upon his part.

2. If there is responsibility on the part of this defendant Rogde for the loss of the registered package referred to in the complaint herein, then it must be (a) by reason of the statutes of the United States; (b) by the rules and regulations of the Post Office Department promulgated pursuant to law; (c) by contract, which in this case is dependent upon the provisions of the bond in connection with the law and rules and regulations.

It is conceded that there is no statutory provision directly fixing the liability on the part of the defendant Rogde as postmaster, for the loss of this package. It is claimed, however, by the plaintiff, that section 810 of the Postal Regulations of A. D. 1902 makes the postmaster liable as an insurer on his bond, and the plaintiff cites, and with justification, the case of United States v. Griswold, 8 Ariz. 453, 76 Pac. 596; Id., 9 Ariz. 304, 80 Pac. 317.

Apparently the case above cited was considered in every material aspect that is raised in the instant case. I am of the opinion, however, that the conclusion of the court reached in this case was not justified by a fair interpretation of the rules and regulations as they existed at that time; it being evident that an important regulation was entirely overlooked, or at least was not considered, in construing the duty of the postmaster with reference to the mail, and especially registered mail, and therefore the determination of whether or not the loss of the registered package without negligence of the postmaster amounts to a breach of the bond given by such postmaster, under section 3834, Revised Statutes of the United States. The decision of the court at page 318 of 80 Pac., at page 307 of 9 Ariz., states:

"These rules and regulations place upon the postmaster the following duty and trust with respect to registered matter: All registered matter must be

kept separate from ordinary mail matter, and so as to be secure from accident or theft. * * * The postmaster will be held accountable for all registered matter coming into his postoffice. Section 1051, Postal Laws and Regulations."

The court then goes on to discuss the necessity for the construction they place upon this section, closing their conclusion with the following language:

"Packages intrusted to them under the registry system be thus insured, as. designed by the post office regulations, the receipt of their special care and watchfulness."

It will be noted that the judgment in this case is based upon this section 1051 of the Postal Laws and Regulations of A. D. 1893, while as a matter of fact at the time of this decision there had been another compilation of the laws and regulations of the postal department, and section 1051, above quoted from the said opinion, was carried forward in the compilation of 1902 of the Postal Laws and Regulations promulgated by the United States Post Office Department as section 810, which changes the phraseology slightly, but not the substance, and reads as follows:

"Sec. 810. All registered matter must be kept separate .from ordinary matter and properly protected from accident or theft. No unauthorized person should be permitted to have access to the place where registered matter is kept, and all persons employed in a post office who handle registered mail must be duly sworn. The postmaster will be held accountable for all registered mail coming into his post office, and he must take such precautions as may be necessary to safeguard it."

In this compilation, following section 810, the following notice appears:

"*See Sec. 278 as to responsibility of postmasters for negligence.*"

Turning, then, to section 278, referred to in the note by the Post Office Department, we find the following:

"Sec. 278. * * * For the value of registered or ordinary mail matter lost by robbery of post offices, the postmaster will be held responsible, if upon investigation it appears that due care was not taken for the protection of the property."

Then also turning to page 402 of the said regulations, we find section 864 with reference to the liability of postmasters, which is as follows:

"Sec. 864. Postmasters will be held personally responsible by the Post Office Department for the wrong delivery, depredation upon, or loss of any registered letter or parcel while in their custody if such wrong delivery, depredation, or loss be due to negligence or disregard of the regulations. They are also liable on their bond for any damage resulting to the department on account of such wrong delivery; depredation or loss."

The Griswold Case was officially reported March 30, 1905, and therefore it will be seen that at the time of the filing of that opinion, and prior to the time the original opinion was reported in 76 Pac. 596, in 1904, the Post Office Department had promulgated its Postal Laws and Regulations of A. D. 1902, and had by section 864 specifically prescribed the liability of a postmaster for the wrong delivery, depredation upon, or loss of any registered letter or parcel while in their

custody, predicating such liability upon the condition precedent that *the loss must be due to negligence or disregard of the regulations.*

It appears from the judgment that is directed in the Griswold Case that interest is to be computed from March 21, 1900, thus indicating that the cause of action arose upon that date. It is possible that section 864 was not in existence at the time the action accrued, and therefore that the Griswold decision was necessarily based upon section 1051, and upon that alone, and that 864 had not then been promulgated at all.

There is no pretense in this case that this defendant Rogde was either negligent or disregarded the regulations, and therefore it appears clear to me that it was never the intent or purpose of the department to charge him with any liability with reference to its loss.

Plaintiff refers to the last portion of this paragraph 864, which reads as follows:

"They are also liable on their bond for any damage resulting to .the department on account of such wrong delivery, depredation, or loss."

"They" in this sentence of this paragraph refers back to the word "postmasters," and it refers to liability on their bond for any damage resulting to the department on account of *such* wrong delivery, depredation, or loss; that is, on account of any wrong delivery, depredation, or loss, if such wrong delivery, depredation, or loss be due to negligence or disregard of the regulations.

It will be observed that in 1902 this section 864 was published, and that the old section 1051 was carried forward as 810. Section 864 is evidently a later regulation. I am not willing to concede that a fair interpretation of the old section 810 evidenced an intent upon the part of the Post Office Department to charge postmasters as absolute insurers of all mail that came into their possession. A fair interpretation of this language is that it was the intent and purpose that more than ordinary care should be used by the postmasters and keep it separate for its greater security, and that the greater security of registered packages was the purpose when this section was framed, rather than that there was any idea of making postmasters absolute insurers of the property.

[4] But if, perchance, my construction of section 810 is wrong, and I have found nothing except the Griswold decision that indicates it, then clearly the department, when they promulgated section 864 above quoted, and made that a part of the regulations, clearly evidenced an intent by the department to fix liability upon postmasters for loss of registered mail due to negligence or disregard of the regulations. If that was the intent and purpose when this was promulgated in 1902, it controls the issue that is presented here.

The later enactment, 864, must take precedence over old 1051, even though 1051 is carried forward into the compilation of 1902 as section 810; 864 being the later enactment and being specifically placed under the title, in the arrangement of the postal laws, "Responsibility of Postmasters for Registered Matter," and under the chapter title of "Delivery of Registered Matter." This being true, in my judgment it must control the duty of the postmaster under the terms of his bond

to deliver the mail to the addressee upon demand, and that this duty to deliver is performed by the postmaster when he cares for the registered mail in the manner provided by the postal laws and regulations and protects it in the manner directed, and he is relieved by the specific provisions of the postal laws and regulations from any liability for wrong delivery, depredation upon, or loss of any registered letter or parcel while in his custody, if the same is not due to negligence or his disregard of the regulations.

The primary duty of a court in construing the provisions of this bond and these sections of the postal laws, is to ascertain and effectuate the intention of the parties. This can only be done by examining the language and looking to the relation which the parties bear to each other and to the subject-matter of the contract. U. S. v. Atlantic Coast Line (D. C.) 206 Fed. 190.

As circumstances showing the manner in which the relations existing between the postmasters and the postmaster general, and especially the manner in which liability was fixed by the postal laws and regulations, attention is called to Act Cong. March 17, 1882, c. 41, 22 Stat. 29 (U. S. Comp. St. 1901, p. 2616), which provided:

"That the Postmaster General be, and he is hereby, authorized to investigate all claims of postmasters for the loss of mail order funds, postal funds, postage stamps, stamped envelopes, newspaper wrappers, and postal cards, belonging to the United States in the hands of such postmasters, resulting from burglary, fire, or other unavoidable casualty, and if he shall determine that such loss resulted from no fault or negligence on the part of such postmasters, to pay to such postmasters, or credit them with the amount so ascertained to have been lost or destroyed."

By an act approved January 21, 1914, the indemnity above provided for was extended to include postal savings funds, postal savings cards, postal savings stamps, postal savings certificates, key deposit funds, funds deposited to cover postage on mailing, and funds deposited to cover orders for stamped envelopes. Congress by the statutes has expressly provided for the relief of postmasters from the absolute liability that is imposed upon them by statute for the property that belongs to the government of the United States. The very fact that these statutes have never been extended to cover ordinary mail matter or registered mail is persuasive at least that such extraordinary liability with respect to mail matter was never contemplated and that the interpretation given the statutes and regulations by Congress was that there existed no such liability without negligence.

My attention has been called to the further fact that the Postmaster General has promulgated an edition of the Postal Laws and Regulations dated 1913, which is the first that has been issued since 1902, and I am impressed with the fact that the regulation referred to in the Griswold Case as section 1051 of the 1893 Regulations, and which was carried forward as section 810 in the Postal Laws of 1902, has been separated and placed under different subtitles. Section 524 contains that provision prohibiting unauthorized persons being permitted to handle the mail, while section 885 provides that registered matter shall be kept separate from ordinary matter and properly protected from accident or theft. And that portion of the old regulation 1051 which

provides that "the postmaster will be held accountable for all registered matter coming into his postoffice" has been entirely eliminated, and in its place we find section 940, which is practically identical in meaning and effect with section 864 of the Regulations of 1902, which is above referred to.

It seems to me that this new compilation emphasizes the intent and purpose of the department, when it promulgated section 864, to eliminate all question as to the liability of the postmaster without negligence. This must be true if any meaning whatever is to be given to section 864. It was a useless act, and entirely meaningless, unless it was intended to and did define the responsibility of the postmasters in cases exactly like the one at bar.

It is unnecessary to consider here, because it is conceded upon all hands, that the statutes of the United States and the rules and regulations absolutely fix the responsibility of the postmaster for all property of the government, including moneys and post office property. There is no question but that he is absolutely liable for these, and the fact that there is no uncertainty with reference to this liability, but that the same has been fixed by definite, plain provisions of law, rules, and regulations, is another reason that influences my judgment in determining the intent and purpose of the department with reference to this liability of the postmaster for registered mail lost without fault upon his part.

That the government has placed an absolute responsibility upon its officers, in different departments, for the "property of the United States," but has claimed no such liability for property of the public coming into the hands of the officer in the performance of his duty, is illustrated by the case of Robertson v. Sichel, 127 U. S. 507, 8 Sup. Ct. 1289, 32 L. Ed. 203. In that case a collector of customs was held not to be liable for the value of the contents of a trunk which passed through the custom house, and which was probably stolen by one of his subordinates. But had Robertson been sued upon his bond by the United States for the loss of money of the United States, collected by him in his official capacity, he would have been absolutely liable, notwithstanding the money might have been embezzled by one of his subordinates, and without any fault or negligence on his part.

This is important only in so far as it tends to show the policy of a department of the government toward one of its officers, as well as the construction placed upon the liability of such officer by the Supreme Court of the United States, where there was no negligence upon his part.

There are a number of sections of the statutes of the United States specifically providing absolute responsibility of the postmaster for money and property of the United States, and no good purpose can be served by reference to them here. Suffice it to say that a postmaster, in the receipt and transmission of mail matter, owes it to the public to exercise great care, skill, and discretion, but when it comes to his dealing with the property of the government of the United States, his employer, he owes duties entirely different; the same being provided by certain statutes, and rules and regulations, together with the provisions of his bond with reference thereto.

My attention has been called to a number of cases by plaintiff, and they have been duly considered. In practically all of them, except the Griswold Case, property of the United States was involved, and in most cases negligence or wrongdoing on the part of the defendant was an element. These cases throw no light upon the question here.

My attention is specifically called by plaintiff to plaintiff's claim that the condition of the bond is breached by admitting the receipt of the registered parcel, and the refusal and failure of the postmaster to deliver the registered parcel, on demand of the addressee. The evident reply to this, in the light of my construction of the rules and regulations, is that they do not hold the postmaster responsible, or the postmaster and his bondsmen liable upon their bond, for the wrong delivery, depredation upon, or loss of any registered letter or parcel, while in the postmaster's custody, unless such wrong delivery, depredation, or loss is due to negligence or disregard of the regulations by such postmaster.

Being fully convinced that there is neither law, nor regulation promulgated pursuant to law, and no contract imposing upon the defendant Rodge any liability whatsoever on account of the loss of the registered mail referred to in the complaint herein, in the absence of negligence or wrongdoing on his part:

1. The demurrers to the answers of the defendants should be overruled.

2. The complaint, eliminating all claim of wrongdoing or negligence on the part of the defendant Rogde, does not state facts sufficient to constitute a cause of action against the defendants, or either of them, and judgment should be entered dismissing plaintiff's complaint herein.

Let judgment be entered accordingly.