Argued 13 February; decided 23 April, 1900.

## SHAVER v. ADAMS.

[60 Pac. 902.]

BOUNDARIES—ANCIENT PLATS AND SURVEYS.

In ascertaining the location of a boundary monument the fact that property was laid out with reference to a certain stone, and that public improvements were made shortly after the original survey using such stone as a known point, affords a strong inference that it is the monument originally placed to mark the boundary, rather than another stone which was first claimed to be the true monument by a surveyor who ran the lines many years after the monument had been set.

From Clackamas : THOS. A. MCBRIDE, Judge.

This is a suit by George W. Shaver against W. D. Adams to ascertain and establish the dividing line between contiguous lands. The facts are that on June 29, 1880, plaintiff, being the owner in fee of the Hugh Gordon donation land claim, in Clackamas County, Oregon, conveyed to one Laramie Mayer one square acre thereof,

situated in the southeast corner, excepting therefrom two tracts which had theretofore been conveyed. The defendant owns the tract so conveyed to Mayer, and a controversy has arisen respecting its north boundary, growing out of the uncertainty as to the location of the southeast corner of said donation claim; the defendant insisting that the corner is evidenced by a stone marked with a cross, while plaintiff, who owns the land adjoining defendant's on the north, maintains that the said corner is indicated by a stone having a hole drilled therein, situated about twelve feet south and about four feet east of the stone claimed by the defendant as the corner. The cause was tried upon the theories of the respective parties, and from the evidence, taken before a referee, the court found that the stone having a cross thereon was the initial point, and that the north boundary of defendant's tract begins at a point in the east boundary of the claim 208 feet and 8.52 inches north of said stone, and runs thence west, parallel with the south boundary of said claim, 208 feet and 8.52 inches, to a point; and, having rendered a decree establishing such line as the boundary, plaintiff appeals.                     AFFIRMED.

For appellant there was a brief over the name of *Thayer & St. Rayner*, with an oral argument by *Mr. Henry St. Rayner*.

For respondent there was a brief over the name of *C. D. & D. C. Latourette*, with an oral argument by *Mr. C. D. Latourette*.

MR. JUSTICE MOORE, after stating the facts, delivered the opinion of the court.

The original stake set by the government surveyor to evidence the southeast corner of the Hugh Gordon donation land claim having been lost or destroyed, the relocation of the point at which said stake was so placed is the pivotal question presented by this suit. The evidence shows that such point is also the southwest corner of the Mathias Sweigle, the northwest corner of the William Engle, and the northeast corner of the James Larkins, donation land claims. County roads running in the direction of the cardinal points of the compass cross at this point, and, several buildings having been erected at and near the cross roads, the place is known as the "Village of Molalla." Laramie Mayer, as defendant's witness, testified that, prior to and at the time he purchased the one-acre tract from plaintiff, the latter, in describing its boundaries, told him that the southeast corner thereof was evidenced by a stone set in the center of the cross roads, and subsequently took him to, and pointed out, said north stone as the corner ; and, a barn having been included in the purchase of said tract, plaintiff and the witness measured the required distance from this stone north, and found that about one-half of the barn extended beyond the boundary upon plaintiff's land, whereupon the witness moved the barn and built a fence upon the line. Mayer also says that he drilled the hole in the south rock for the purpose of testing some drills he intended taking to the mountains. The testimony of this witness respecting the measurement made by him and plaintiff from the stone so pointed out by the latter, to determine the north boundary of the tract in question, and the hole drilled by Mayer in the south rock, is corroborated by that of O. P. Miller, who says the south

stone was taken from a cellar dug by him, and placed in the road, with other filling, for the purpose of leveling up a low place. I. L. Hoffman, in 1892, surveyed the boundary lines of the said donation land claims from points established by the government surveyor in the respective lines, and, while the distance from the established points to the point of intersection did not in any instance coincide with the field notes, he located the initial point at the south stone, and marked it as such. Henry Meldrum surveyed the lines so run by Hoffman, and, appearing as plaintiff's witness, states that in his opinion the south stone is correctly located as indicating the corner. All the buildings erected at Molalla prior to Hoffman's survey seem to have been put up with reference to the line as claimed by defendant, and the stone marked with a cross is very nearly in the center of the cross roads.

John Meldrum resurveyed the boundaries of the Sweigle donation land claim, and, appearing as defendant's witness, stated that in his opinion the north stone was set as a monument to evidence the initial point; and, as a reason for such opinion, he said that the Sweigle claim was the first surveyed, and that, in retracing the boundaries thereof without reference to the other claims, he found the north stone properly located the southwest corner, and that, considering the establishing of the cross roads, the building of the fences, and the erection of the houses conformable to the lines as claimed by defendant, he was convinced that the north stone is placed at the point at which the southeast corner of the Gordon claim was originally located. Samuel Engle, son of William Engle, who had lived on his father's donation land claim about fifty years, having been called as a witness by defendant, testified that he had seen the stake originally set as a monument evidencing the northwest corner of

said claim ; that the north stone, which had been in its present position about twenty-five years, was placed at about the point where the stake was set by the government surveyor ; and that he had never heard of any other corner than such stone until after Hoffman's survey.

If it be assumed that the southeast corner of the Hugh Gordon donation land claim could not be found, the method adopted by surveyors Hoffman and Henry Meldrum to locate the corner by retracing the surrounding surveys was undoubtedly correct ; for the rule is that where there are no marks to the contrary, restraining it, a survey goes to its adjoinders : 4 Am. & Eng. Enc. Law (1 ed.), 783. In *Lewis* v. *Prien*, 98 Wis. 87 (73 N. W. 654), it is held that the unvarying rule to be followed in establishing a lost corner is to start at the nearest known point on one side of the lost corner, on the line on which it was originally established ; then to measure to the nearest known corner on the other side, on the same line; then, if the length of the line is in excess of that called for by the original survey, to divide it between the tracts connecting such two known points, in proportion to the length of the boundaries of such tracts on such line, as given in the survey. Whatever the rule for establishing a lost corner may be, it can have no application to the case at bar; for, in our judgment, the southeast corner of the Hugh Gordon donation land claim is not lost. From the fact that all the buildings erected at Molalla prior to Hoffman's survey appear to have been put up with reference to the lines as claimed by defendant, it is fair to infer that when such buildings were constructed it was generally known where the initial point was located : *City of Racine* v. *Emerson*, 85 Wis. 80 (39 Am. St. Rep. 819, 55 N. W. 177). The construction of these buildings, some of which have been standing about twenty-five years, is not conclusive as to the location of the corner in ques-

tion, for a mistake may have been made in putting up the first house ; but the location of these houses is a circumstance from which it may be inferred that the boundaries of the donation land claims intersect at the north stone. The testimony of Samuel Engle, who claims that the north stone was placed at or about the point occupied by the original stake, in connection with such inference, leaves no doubt in our minds that such stone should be taken as the initial point of the survey, and that the north boundary of the one-acre tract as found by the circuit court is correct. The testimony of one witness tends to show that the road running east and west at Molalla was originally only forty feet in width, but, having been widened to sixty feet, the extension was accomplished by moving the fence on the north side of the road ; and it is argued that this is a circumstance from which it may reasonably be inferred that the south stone marks the spot occupied by the original stake. Such inference is a logical deduction from the fact, but we think the testimony of Engle overcomes such inference, and shows that the north stone, which is placed nearly in the center of the cross roads, is the southeast corner of the Gordon claim, and hence the decree is affirmed. Affirmed.