Argued 30 March; decided 20 April, 1903.

## EGAN v. FINNEY.

[72 Pac. 133.]

ESTABLISHING BOUNDARIES BY STATUTORY PROCEEDING—STATUTE.

1. Section 4907 of B. & C. Comp., providing that when the owner or owners of one or more tracts of land shall desire to permanently establish the corners and boundaries thereof, he or they shall notify the county surveyor, who shall thereupon make the survey, after notifying all persons who may be affected thereby, applies to only those instances in which the boundary is doubtful, disputed or uncertain, and a line that has been accepted as correct for more than ten years is neither uncertain nor doubtful.

EXPENSE OF MESSAGES TO WITNESSES AS COSTS.

2. The expenses incurred by parties or their agents in notifying witnesses to attend a trial cannot be taxed as costs, unless they are such expenses as the statute allows; for instance, the cost of a telegram to a witness to be present at a stated time and place is not chargeable.

DOUBLE FEES AND MILEAGE OF WITNESSES FROM ANOTHER COUNTY.

3. Witnesses residing out of a county where a trial is held, and more than twenty miles from the place of trial, who have not been regularly subpœnaed, are not entitled to double fees and mileage for their attendance.

FEES AND MILEAGE OF WITNESSES VOLUNTARILY ATTENDING.

4. Where witnesses voluntarily attend a trial from without the county, and from a distance of more than twenty miles, and give desirable and important oral testimony, they are entitled to single fees and per diem.

From Marion: REUBEN P. BOISE, Judge.

This is a suit by James Finney against William H. Egan to stay proceedings in an action at law and to determine the boundary between certain lands. The plaintiff is the owner of the northern part of the Lemmon donation land claim, in Marion County, which is bounded on the north by the Albright donation land claim, owned by the defendant. In June, 1887, John Newsome, then the county surveyor of said county, at the request of the parties hereto, surveyed said boundary, and set a stone at the southeast corner of the Albright claim, found to be at the end of an old fence, which coincided with the line. B. B. Herrick, a subsequent county surveyor of said county, on August 26, 1901, at Egan's request, and in pursuance of a notice served upon Finney, resurveyed said line, and located it at the southeast corner of the Albright claim 31 links, and at a point north, 78 degrees west, 78.25 chains, on the township line, 17 links north of said fence. The plaintiff having built a fence

on a part of the line so surveyed by Herrick, beginning at the eastern boundary of the Albright claim, the defendant commenced an action against Egan to recover the possession of the premises inclosed by the new fence, whereupon the latter, after having filed an answer in said action, instituted this suit, in the nature of a cross-bill, in which he alleges that ever since he and the defendant have been the owners of said claims it was understood and agreed between them that the boundary thereof was inaccurate and unknown, and would require a survey to determine its location; that said boundary was never correctly located until surveyed by Herrick in pursuance of an agreement for the resurvey thereof, entered into between the parties hereto; and that the defendant was present during the location of said line, and acquiesced in its establishment. The defendant, having denied the material allegations of the complaint, alleges as a first separate defense that for more than ten years prior to Herrick's survey he had been in the actual, visible, exclusive, hostile, and continuous possession of the disputed premises, claiming to be the owner thereof in fee. For a further defense it is alleged that the plaintiff acquiesced in the boundary established by Newsome, and that the parties hereto and their predecessors in interest for more than thirty years prior to such survey had recognized and acknowledged the line of the old fence as the true boundary between said donation land claims. The reply having denied the allegations of new matter in the answer, a trial was had, resulting in a decree establishing the line of said old fence as the boundary, and perpetually enjoining plaintiff from asserting any claim to the premises in dispute, from which decree he appeals. The defendant, having secured an order requiring the attendance of certain witnesses residing out of said county, and more than twenty miles from the place of trial therein, filed a cost bill, claiming double fees and mileage for their attendance, and expenses incurred by the sheriff in notifying them by telegraph. The clerk allowed the costs as claimed, but upon a motion to retax them the court awarded single fees and mileage for only twenty miles each way for the witness who attended in pursu-

ance of said order, and disallowed the claim for expenses paid to the telegraph company, and from such retaxation the defendant appeals.                                    Modified.

For plaintiff there was a brief over the names of *William H. Holmes, Webster Holmes,* and *William M. Kaiser,* with an oral argument by *Mr. W. H. Holmes* and *Mr. Kaiser.*

For defendant there was a brief and an oral argument by *Mr. Peter H. D'Arcy, Mr. John A. Carson,* and *Mr. George G. Bingham.*

Mr. Chief Justice Moore, after stating the facts, delivered the opinion of the court.

1. The testimony shows that in 1849, a line having been run by a local surveyor to determine the boundary of what were afterwards designated as the Lemmon and Albright donation land claims, a fence was built part way thereon, commencing at the southeast corner of the latter claim; but thereafter the Surveyor General of Oregon, having resurveyed ·said claims, located the boundary between them eight links further north, whereupon the fence was rebuilt upon the line thus established. In locating this boundary the surveyor general set a stake and raised a mound of earth at the southeast corner of the Albright claim, and when Newsome resurveyed the line in 1887 he placed a stone at this point, which has ever since remained as a monument to mark the boundary. We think the testimony shows that the line so run by Newsome at the request of the plaintiff and defendant re-established the line as originally run by the surveyor general. The partition fence was rebuilt soon after this survey was completed. The owners of these donation land claims must then have known where the boundary was located, and the fact that the line of this fence remained unchanged for more than fifty years is a circumstance tending to show that it was built on the boundary. In consequence of a controversy having arisen between the parties hereto concerning the parts of said fence which each should maintain, respectively, arbitrators were appointed, who, having determined the matter, each party thereafter kept in repair the part of the partition

fence assigned to him, thus showing that Egan acquiesced in the Newsome line. We think the preponderance of the testimony clearly shows that the boundary, as established by the surveyor general, was correctly retraced by Newsome; that Egan, for more than ten years after the latter survey was completed, acquiesced therein; and that Finney for more than ten years held possession of the land to the line of the old fence, claiming to be the owner thereof in fee.

It is maintained by plaintiff's counsel, however, that, Herrick's survey having been made in compliance with the statute prescribing the mode of settling controversies of this character, Finney, having taken no appeal from the action of the county surveyor in locating the boundary, is concluded thereby, and hence the court erred in rendering the decree of which they complain. The statute in question, so far as relevant, is as follows: ''Whenever the owner or owners of one or more tracts of land shall desire to permanently establish the corners and boundaries thereof, he or they shall notify the county surveyor to make a survey thereof and establish such corners and boundaries; and shall furnish him the names and addresses of all persons residing in the county or elsewhere, so far as known, who may be affected by such survey. The county surveyor shall cause a notice in writing to be served on each person who may be affected by the survey, or their agents residing in said county, stating the time when he will begin the survey, and the lines or corners to be established, which notice shall be delivered to the person or left at his usual place of residence at least six days prior to the day set for survey'': B. & C. Comp. § 4907. ''An acknowledgment in writing, or the voluntary appearance of a person interested in the survey, is equivalent to service'': B. & C. Comp. § 4908. ''On the day mentioned in the notice, or on the next thereafter, the surveyor shall proceed to make the survey, but he may for good cause adjourn from time to time. He may, upon the application of any person who is interested in such survey, take the evidence of any witness who may be produced to prove any point material to such survey, which testimony shall be reduced to writing and sub-

scribed and sworn to by the witness, and, together with an accurate plat and field notes of such survey, shall be filed in the office of the county surveyor within thirty days after the completion of such survey'': B. & C. Comp. § 4909. ''Upon the filing of the report of each survey, any person interested in the same can at any time within thirty days thereafter appeal to the circuit court, by filing with the county surveyor a notice of his intention to appeal, and by giving a bond to be approved by the clerk of the circuit court, conditioned for the costs of the appeal if the report of the surveyor shall be affirmed by the court'': B. & C. Comp. § 4910. Even if it be assumed that a party can be deprived of his right to a trial in the circuit court of an issue concerning the boundary to his real property, and that the legislature possesses plenary power to create a tribunal to settle controversies of such character, before the latter forum can secure jurisdiction of the subject-matter the boundary must be doubtful, disputed, or uncertain. The authority of the county surveyor ''to permanently establish the corners and boundary'' of land implies that the corners are not established. In *Smith* v. *Forrest,* 49 N. H. 230, Mr. Justice NES-MITH, in defining the word ''establish,'' says: ''The ordinary meaning of the word is to settle certainly, or fix permanently, what was before uncertain, doubtful, or disputed.'' In our opinion, the boundary in the case at bar was not uncertain or doubtful at the time of the attempted change by Egan, and Finney, never having assented to the relocation thereof, is not bound by the action of the county surveyor, which, so far as he is concerned, is a nullity: *Shaver* v. *Adams,* 37 Or. 282 (60 Pac. 902).

2. The defendant, on March 4, 1902, presented, in support of his motion for an order requiring the attendance of certain witnesses, an affidavit showing that the cause was on the preceding day set for trial on the 8th of that month; that L. J. Lemmon, of Baker City; Lemuel Lemmon, of Irving; Mrs. Elizabeth C. Davis, of Wilbur, and John B. Embree, of Oregon City, Oregon, were material witnesses for the defense, and the oral examination of each was important and desirable, setting

out the substance of the testimony which it was expected each
would give, and that it would be impossible to prepare in ad-
vance interrogatories to rebut evidence that might be adduced
on behalf of the plaintiff.   A subpœna was thereupon issued to
said witnesses, upon which the following order was indorsed:

"Upon motion of the within-named defendant, and upon
reading his affidavit, it is ordered that the within-named wit-
nesses, L. J. Lemmon, Lemuel Lemmon, Mrs. Elizabeth C.
Davis, and John B. Embree, do attend upon the trial of the
within-mentioned suit in accordance with the provisions of the
within subpœna.   Dated March 4, 1902.
                                        "R. P. BOISE, Judge."

These witnesses having attended the trial, that part of the
cost bill containing the claims for their mileage and per diem is
as follows:

| | |
|---|---:|
| John Embree, 2 days, 74 miles | $ 18 80 |
| Lem Lemmon, 2 days, 130 miles | 30 00 |
| L. J. Lemmon, 2 days, 816 miles | 167 20 |
| Eliz. C. Davis, 2 days, 272 miles | 58 40 |

The sheriff's fees of $16.52 comprised the several items con-
tained in the following bill:

Salem, Oregon, March, 1902.
F. W. Durbin, Sheriff, to Western Union Telegraph Co.,
Incorporated, Dr.

| | |
|---|---:|
| L. J. Lemmon, Baker City (25) words | $    95 |
| Lemuel Lemmon, Irving, Oregon (29) words | 88 |
| To special delivery on Irving message, 5 miles | 1 00 |
| John B. Embree, Oregon City (29) | 63 |
| Mrs. Elizabeth C. Davis, Wilbur, Oregon, via Rose-burg (29) | 1 26 |
| | $    4 72 |

The court found that the testimony of each of said witnesses
was "material, relevant, and competent on behalf of the said
defendant;" that each traveled the distance, and was in attend-
ance as a witness only, as stated in the cost bill; but awarded
each only $2 per day, and allowed only forty miles' travel, and
disallowed the sheriff's claim for $4.72 on account of telegrams.

The statute provides that any writ or order in a civil suit

may be transmitted by telegraph for service in any place, and the telegraphic copy of such writ or order may be served by the officer or person to whom it is sent for that purpose, and returned by him in the same manner and with like force and effect in all respects as the original thereof: B. & C. Comp. § 4762.  A subpœna may be served by the party or any other person over eighteen years of age.  The service is made by reading and showing the original and delivering a copy or ticket containing its substance to the witness personally, giving or offering to him at the same time the fees to which he is entitled for travel to and from the place designated and one day's attendance there: B. & C. Comp. § 804.  A copy of the subpœna in question is included in the transcript, but it has no return indorsed thereon to show that it had ever been served in the manner prescribed by law.  It cannot be inferred that a copy of the subpœna was sent as a telegraphic message addressed to each witness, for it will be remembered that the bill of the telegraph company is for transmitting twenty-five words to the witness at Baker City and twenty-nine words to the witnesses at Irving, Wilbur, and Oregon City, respectively.  Counting the words in the subpœna, we find that it contains more than one hundred, and an examination of the court's order requiring the attendance of these witnesses will show that it contains more than twenty-nine words.  It is quite evident, we think, that this subpœna was never served, but that the sheriff of Marion County sent messages to each witness; but, as this amounted to no more than an ordinary request by an agent of the defendant to attend the trial as a witness, the defendant is not entitled to any compensation on account of the sheriff's expenses incurred in notifying them.

3. In *Burrows* v. *Balfour,* 39 Or. 488 (65 Pac. 1062), it was held that a witness residing out of the county, who attended the trial therein in pursuance of an order of the court indorsed upon the subpœna, which had been duly served, was entitled to double mileage and per diem.  There can be no due service of a subpœna, however, without reading and showing the original and delivering a copy or ticket containing its substance to the

witness personally, and at the same time either giving or offering to the witness the fees to which he is entitled for traveling to and from the place designated, and one day's attendance there: B. & C. Comp. § 804; *Lombard* v. *Smith*, 37 Or. 23 (60 Pac. 388, 707). The subpœna not having been served in the manner prescribed by law, the witnesses residing out of Marion County were not entitled to double mileage and per diem.

4. These witnesses attended, however, in pursuance of a request, and, as the court found that their testimony was "material, relevant, and competent," they are entitled to single mileage and per diem, if their oral examination was important and desirable: B. & C. Comp. § 807; *Spencer* v. *Peterson*, 41 Or. 257 (68 Pac. 1108); *Luckey* v. *Lincoln County*, 42 Or. 331 (70 Pac. 509). The issue in this suit involving an inquiry as to angles, lines, courses, and distances, an examination of the transcript, in the light of the maps introduced in evidence, shows that the oral examination of these witnesses was important and desirable. They are, therefore, entitled to single mileage from their respective residences to the place of trial and return, as claimed in the cost bill, and the decree will be modified in this particular, but in all other respects affirmed. It is probable that, if a claim for single mileage had been presented to the trial court, the same conclusion would have been reached by it, and, this being so, neither party will be allowed costs on this cross-appeal.    MODIFIED.

Decided 25 May, 1903.