## KOHLHAGEN v. CARDWELL.

(184 Pac. 261.)

**Evidence—Conclusion Admissible as to Matter Difficult to State Otherwise.**

1. In an action on a note, which defendants claimed to have paid by the delivery of butchered hogs, it was not error to permit plaintiff's bookkeeper to testify that when she returned to the shop it would have been impossible for her to have overlooked 36 hogs, the number claimed to have been delivered, had they been there, though the testimony was in some sense a conclusion. .

[As to belief, motive or intent of witness in an action on contract, see note in 21 Am. St. Rep. 317.]

**Evidence—Experiment to Determine Capacity of Wagons in Carrying Hogs.**

2. In an action on a note claimed to have been paid by defendants by the delivery of 36 butchered hogs, testimony as to an experiment in loading hogs on wagons, such as defendants claimed had been used in the delivery, introduced by plaintiff, *held* admissible, in so far as it had any effect at all.

**Costs—Mileage for Nonresident Witnesses from State Line Allowed.**

3. The court properly taxed against defendants as costs single mileage from the state line to the place of trial for plaintiff's witnesses, who came at his request from outside the state without being subpoenaed after they entered the state; it being desirable that they should testify orally to the jury, in view of the conflicting evidence.

From Douglas: JAMES W. HAMILTON, Judge.

Department 2.

This is a very remarkable and unusual case. The plaintiff sues upon a promissory note. The defendants admit the note but claim to have paid the same by the delivery of 36 head of hogs, weighing 7,772½ pounds, at the market price of 15 cents per pound, amounting to the total of $1,165.87. The plaintiff denies this payment *in toto,* and denies that he ever received 36 hogs, or any hogs at all, from the defendant at the time in question, or upon the debt in question.

The defendant is corroborated in his claim, that he delivered the hogs, by his son and his wife and by the testimony of two hired men, who testified that they helped to butcher the hogs and haul them to Roseburg and deliver them to plaintiff. In addition to this, the defendant's story is corroborated, to some extent, by the testimony of people who lived along the road between defendant's ranch and Roseburg and who claim to have seen him hauling hogs in the direction of Roseburg at about the time in question. The defendant claims to have delivered the hogs at plaintiff's butcher-shop in Roseburg, just at noon, and at a time when the plaintiff himself was not actually present. He claims to have delivered the hogs to James Kooken and George Hoefling, who were employees of the plaintiff working at the butcher-shop in question. Defendant also testifies that one Andy Morgan, who was working for him at the time, in his prune orchard, assisted in butchering the hogs and rode with him on the wagon which he was driving to town, and helped to deliver the hogs to the plaintiff.

On the other hand, the plaintiff testified that he never received any hogs from the defendant on the debt; and plaintiff's books fail to show that any were received. Kooken and Hoefling, the two employees of plaintiff to whom defendant claims to have delivered the hogs, testify positively that no hogs were delivered. These witnesses are corroborated by Fred Neurither, who worked in the back of plaintiff's shop, and Alice Mann, the bookkeeper; and also by plaintiff's daughter, Florence Kohlhagen. All of these witnesses testified that no hogs were delivered by Cardwell. In addition to this testimony the plaintiff, in this last trial, offered the testimony of Andy Morgan, one of the employees of the defendant at the time

the hogs are alleged to have been butchered on his ranch; and whom, the defendant testified, assisted in the butchering and in transporting the hogs to Roseburg and delivering them there to the plaintiff. This witness testified positively that he was at work at the defendant's ranch at the time in question, but that he did not assist in butchering any hogs there or in transporting them to Roseburg or delivering them to the plaintiff. In fact, he testified that no hogs were butchered at defendant's ranch at or about that time.

At the trial there was a verdict for the plaintiff. There are only two claims of error occurring at the trial, both of which refer to the admission of testimony. When Alice Mann, plaintiff's bookkeeper, was on the stand and having testified to the particulars in regard to her presence at the shop that day, she was asked the following question:

"Q. Now would it be possible for 36 head of dressed hogs to have come into the shop, on the 1st day of March, 1917, or about that time, before you left on March 7th, and you not know it?"

The objection to this question was overruled and the witness answered:

"A. It would be impossible for them to come and me not see them when I came back. I would see even two or three hogs and certainly could not overlook 36."

This was one of the errors complained of. The other had reference to certain experiments as to the space occupied by hogs in the wagon. This will be noticed more particularly in the body of the opinion.

AFFIRMED.

For appellants there was a brief over the names of *Messrs. Rice & Orcutt* and *Mr. Elbert B. Hermann,* with an oral argument by *Mr. A. N. Orcutt.*

For respondent there was a brief and an oral argument by *Mr. B. L. Eddy.*

BENNETT, J.—1. We think there was no error in permitting the witness, Alice Mann, to testify as to whether or not the hogs could have been in the shop without her seeing them. This, of course, was in some sense a conclusion; but whether they could have been there and escaped her observation depended on a great number of small details—the general course of business—the place where hogs were hung—the arrangement of the building and position of windows and doors therein—her own position in the building—her own habits of observation and alertness of mind and the extent to which she kept the business under her personal observation. These were all matters that could hardly have been accurately and fully reproduced to the jury. Under such circumstances the witness is permitted to state her conclusion, which is treated as a conclusion of fact under the authorities.

In Lawson on Expert and Opinion Evidence, page 509, the author quotes with approval from the opinion in the case of *Cavendish* v. *Troy,* 41 Vt. 107, as follows:

"Where the witness has had the means of personal observation and the facts and circumstances, which lead the mind of the witness to a conclusion, are incapable of being detailed and described so as to enable anyone but the observer himself to form an intelligent conclusion from them, the witness is often allowed to add his opinion or the conclusion of his own mind."

In the Vermont case quoted from, the witness was being interrogated as to the residence of another party in a certain town, and was asked:

"Q. From your opportunities of knowing, as you have stated them, do you think it possible for T. to have lived in J. that year and you not have known it?"

And the question was held proper.

In Rodgers on Expert and Opinion Evidence, page 9, Section 4, it is said:

"Witnesses are allowed to express opinions based on facts within their personal observation when the facts cannot be so described as to enable another to draw any intelligent conclusions therefrom."

It is also claimed that there was error, in permitting the evidence of certain witnesses for the plaintiff, in regard to experiments made by them in loading hogs in a wagon. The defendant had testified that the hogs delivered by him were carried in two wagons, twelve in a small or ordinary wagon which, however, had a bed 16 inches longer than an ordinary wagon, and twenty-four of them in a large wagon with a rack. This rack, according to the testimony of the defendant, was 14 feet long and about the width of an ordinary wagon, and that the rack on this wagon was 3 ft. 6 in. high. There is a discrepancy between the testimony of this witness, as to the height of the wagon, and that of Dug Good, from whom the wagon was obtained, who testified that it was only 32 instead of 42 inches high. The testimony of the defendant is to the effect that the hogs were put in the wagon in layers, three in each layer lengthwise across the bed of the wagon, and then others were piled in upon these in the most convenient way. According to the testimony of the defendant the hogs taken in by him would average about 216 pounds in weight. The experiments made by the defendant were with an ordinary wagon, and the hogs weighed 219 pounds each, and the experiment was made with eight hogs.

2. In the matter of the experiment, there was no attempt to fill the wagon, which was only 29½ inches high, and the only effect of the testimony was to show

about what space such hogs would occupy in a wagon. The testimony was to the effect that three such hogs could be laid lengthwise in a tier across the wagon. This was in accordance with the testimony of the defendant, who testified that the hogs transported were laid in the wagon in that way. The testimony was, that two tiers of the hogs were 10½ feet long, and that each hog was 16 inches one way and 12 the other, and the 3 hogs in each row filled the bed up the full width, and when one hog was laid sideways across these it filled the bed up to within 6 inches of the top. This testimony does not seem to have had much weight and it probably did not influence the jury at all. Indeed, in some respects, as we have seen, it corroborated the testimony of defendant. If the large rack was 42 inches high, as testified by defendant, the testimony rather tended to show that 24 hogs could have been loaded in such a rack 14 feet long.

It is practically conceded in the brief of the learned attorney for the defendant, that the evidence had no logical effect in the case; but it is urged, that—

"The jury would naturally conclude that this evidence must be beneficial to the respondent or he would not have called the witnesses, and being unable to figure out for themselves what benefit it was, took it for granted that it was beneficial, and that these men would not have come in and testified unless their evidence was beneficial to the respondent."

We cannot assume that the jury were so lacking in intelligence as to be carried away and influenced by such artificial and illogical considerations. On the contrary, we must presume that they were men of ordinary and usual intelligence and that they would decide the case according to the evidence, without refer-

ence to the mere number of witnesses called by the respective parties.

The questions involved in this case were peculiarly for the jury, involving as they did so much of conflict in the direct testimony of the witnesses, and so many conflicting circumstances corroborating each side. The jury heard and saw the witnesses and could compare their testimony and judge of their credibility. The case seems to have been fairly tried, as the record is unusually free even from claim of error. Even if we thought that the testimony, as to the loading of these hogs, was on the whole inadmissible, it would seem a trifling thing upon which to reverse a case which had otherwise been fairly tried. It is so unlikely and improbable that the evidence substantially affected the verdict and it is so minor and unimportant in its character, we should hesitate to reverse the case upon that ground.

Besides we think the evidence, so far as it went and so far as it had any effect at all, was admissible. It only went to the extent of showing what space in an ordinary wagon-box eight hogs would fill. The hogs were practically the same size as the average of the hogs hauled by the defendant. The average of one lot was 215 pounds and a fraction over, and the other 219 pounds and a little over, or about four pounds difference. This was about as close as was possible and the wagon-boxes were practically the same in width. The length of the wagon-box or its height did not cut any figure so far as the experiment went, for it was not claimed that the hogs loaded on experiment filled the whole space of the wagon-bed either as to length or height, so the only effect of the experiment was to show the space occupied by each hog, the number that could be put in a tier across the bed and the

length of two tiers of such hogs in the bed. For these measurements the conditions of the experiment were almost exactly similar with the conditions as to the hogs loaded by defendant. As we have already said, the evidence certainly did not go very far and probably did not at all contradict the evidence of the defendant. Nevertheless, it might assist the jury somewhat, in arriving at a conclusion as to how many hogs could be loaded in such wagons to know how much space would be taken by such a hog.

The conditions do not have to be as we understand it, exactly alike, in order to sustain the admission of the experimental testimony. Such testimony is largely in the discretion of the court and it is only necessary that the facts of the experiment be reasonably similar to those in the main contention and not misleading in their character. In one of the Lake Labish cases— *Leonard* v. *Southern Pacific Co.*, 21 Or. 555 (28 Pac. 887, 15 L. R. A. 221),—the defendant contended that the fall of the bridge and the ensuing wreck was caused by someone having placed a loose rail across the rail of the defendant's track. The plaintiff, in rebuttal, produced a loose rail at the trial, and a car-wheel, and undertook to show by experiment that the marks on the loose rail introduced by defendant could not have been caused in that way. The conditions were not exactly the same. The bottom rail was loose instead of being fast to the track and the wheel offered in evidence was only 26 inches, whereas the wheel of the locomotive was 33 inches in diameter. It was urged that the conditions were not sufficiently similar to justify the introduction of the experiment in evidence. Mr. Justice LORD, delivering the opinion of the court, said:

"In all cases of this sort very much must necessarily be left to the discretion of the trial court, but when it appears that the experiment or demonstration has been made under conditions similar to those existing in the case at issue, its discretion ought not to be interfered with."

In *Davis* v. *State*, 51 Neb. 301 (70 N. W. 984), there was a controversy as to whether or not the defendant could have unscrewed certain bolts and drawn the spikes, and torn up the track with a monkey-wrench and claw-bar offered in evidence. The place in question was on a trestle, and the state was permitted to offer evidence as to experiments in tearing up a track at another place on the tracks of defendant, where the track ran along the ground and not on a trestle. The court held the evidence admissible, saying:

"It was for the jury to consider the place where the displacement of the fixtures occurred and the place where the experiment was made, and then to give such weight to the testimony of the state's witness who made the experiment, as they thought it deserved."

In *Sonoma County* v. *Stofen*, 125 Cal. 32 (57 Pac. 681), the county treasurer being sued for a balance of county money in his hands, claimed that he had been robbed of the money, and that the robber had knocked him down and left him unconscious, and locked him in the vault where he remained for a number of hours. The vault was in his office and was connected by doors with the sheriff's office in another part of the building. He claimed to have kicked violently against the door after he became conscious and made all the noise he could in that way. The state offered evidence of witnesses, who had made experiments by kicking at the door in the vault, and the testimony of other witnesses in the sheriff's office and other parts of the

courthouse who had heard the sound made in the vault. There had been some changes in the building and it was not shown that the climatic or atmospheric conditions were the same. It was urged that the conditions were not sufficiently similar to justify the evidence of the experiment. The court held otherwise, saying:

"Experimental evidence in corroboration or disproof depends, for its value, upon the fact that the experiment has been made when the conditions affecting the result are as near as may be, identical with those existing at the time of and operating to produce the particular effect. An absolute identity is, of course, impossible but a substantial identity must exist to give the evidence value. But this identity need not extend to nor be shown to exist as to conditions which could have had no causal operation upon the result."

The authorities are not very definite as to just how closely similar the conditions of the experiment must be to the facts in contention, in order to make the experiment admissible. We think, however, a fair statement of the rule would be, that if the experiments are not likely to be misleading to the jury in any particular, and are under conditions similar, so that they would be of assistance to the jury in arriving at a correct verdict, the evidence is admissible.

We think the experiment in this case came within this rule. The hogs were practically of the same size as the average of those shipped by the defendant, and the wagon-box was a standard wagon-box in each case. These were the important conditions for this experiment, as far as it went. It is true that the wagons were not of the same length, but that fact was in no way misleading to the jury, for the difference was in evidence before them, and there was no attempt on the

part of the plaintiff to show any more than the mere fact of how much space in length and in width the two tiers of hogs took and the height of such tiers. This was as far as the experiment went, and the length of the wagon-box, or even its height, did not enter into the question at all. We think, therefore, the admission of the testimony in regard to these experiments was within the sound discretion of the court.

3. The only other question involved, refers to the taxation of costs. The plaintiff in his cost bill, included mileage for the witnesses Kooken, Hoefling and Morgan, from the place where they entered the state line. These witnesses resided out of the State of Oregon, one at Seattle, Washington, one at Pocatello, Idaho, and one in Massachusetts. They were not subpoenaed, but came as witnesses at the request of the plaintiff. It is stipulated that they actually traveled the miles claimed, from the state line to Roseburg, the place where the trial was held. It is claimed on behalf of the defendant, that as these witnesses did not reside within the State of Oregon, and were not subject to subpoena in this state, and as the court did not and could not effectively order their personal attendance, the plaintiff is not entitled to recover mileage for such witnesses.

We think the question is concluded by the principles announced and the reasoning in the cases of *Crawford* v. *Abraham,* 2 Or. 166, and *Egan* v. *Finney,* 42 Or. 599 (72 Pac. 133). In the Crawford case it is said:

"Mileage will not be allowed for witnesses *beyond* the boundaries of the state."

It is also said in that case:

"The attendance of witnesses may be procured by request of parties or by agreement, and the parties so

liable may recover disbursements for such mileage and attendance.

"The statutory means of compelling the attendance of witnesses is by subpoena duly served but we are at a loss to see how any party can be injured in having to pay mileage and attendance merely for the witnesses of an adversary, who attends upon request or agreement, when the additional expense of officers' fees and mileage for issuing and serving of a subpoena, swelling largely the claim for disbursements, could do no more than procure the attendance of the witness."

In this case the witnesses might unquestionably have been subpoenaed at the state line and compelled to attend, and in that event it seems clear that they would have been entitled to their mileage from the state line, and, as is said in the Crawford case, the defendant could lose nothing by the fact that they were not regularly subpoenaed. In *Egan* v. *Finney*, 42 Or. 599 (72 Pac. 133), the court held that the witnesses in question were not properly subpoenaed. One of them had come a long distance from Baker County. The court said:

"These witnesses attended, however, in pursuance of a request, and as the court found their testimony was material, relevant and competent, they are entitled to single mileage and per diem, if their oral examination was important and desirable. * * The issue in this suit involving an inquiry as to angles, lines, courses, and distances, an examination of the transcript, in the light of the maps introduced in evidence, shows that the oral examination of these witnesses was important and desirable. They are, therefore, entitled to single mileage."

These decisions establish the rule, that a party may recover single mileage for witnesses who reside in some other county of the state, where their oral testimony is desirable, even although they may not have

been regularly subpoenaed or served with an order of the court, and it is fully established in the Egan case, as we think, that the court may look to the whole record as to the necessity and desirableness of securing the attendance of the witnesses.

It is true that in neither of these cases does it appear that any of the witnesses resided outside of the boundaries of the state, but in this regard we cannot see any distinction between the case of a witness who resides in Baker County, and one who comes across the state line into Baker County, from another state—in the latter case they are subject to a subpoena as soon as they cross the state line—and in neither case is the adverse party in any way prejudiced, or his costs increased, by the fact that they were not regularly subpoenaed and compelled to attend.

In this case, as we have already seen, it appears from the record that there was a very great conflict between the witnesses for the plaintiff and defendant on the vital point in the case. We think that if there ever was a case where it was important and desirable that the witnesses should testify orally so the jury could have an opportunity to observe them, and judge of their manner on the witness-stand and of their credibility, this was such a case. We think, therefore, there was no error of the court in taxing single mileage for these witnesses from the state line to the place of the trial.      AFFIRMED.

BEAN, BURNETT and HARRIS, JJ., concur.