Argued November 6, affirmed December 12, 1951

# LONGVIEW FIBRE COMPANY *v.* JOHNSTON

238 P. 2d 722

*Warde H. Erwin,* of Portland, argued the cause for appellant. Lee A. Ellmaker, of Portland, filed a brief for appellant. A supplemental brief was filed by Boyd, Ferris & Erwin, of Portland.

*Carl E. Davidson,* of Portland, argued the cause for respondent. With him on the briefs was Walden Stout, of Portland.

Before BRAND, Chief Justice, and HAY, LUSK, WARNER and TOOZE, Justices.

HAY, J.

This is a suit to enjoin defendant from trespassing upon plaintiff's real property and cutting, removing, or injuring any timber or trees thereon, and for damages.

The complaint alleges that plaintiff is the owner and in possession of the east half of the east half of section 9, township 4 north, range 5 west of the Willamette Meridian, in Columbia county, Oregon; that such property contains large quantities of valuable

timber; that, beginning about September 17, 1947, and continuing to the date of the filing of the complaint (which was April 29, 1949), defendant wilfully, intentionally, and unlawfully trespassed on said property, constructed and used a logging road thereon, cut and removed timber therefrom, and converted such timber to his own use; and that the timber removed from said property was of the reasonable value of $4,500. Treble damages was demanded under § 8-406, OCLA, besides $100 as damages for incidental injury to the real property. As grounds for equitable relief, it was alleged that defendant had refused, on demand, to cease and desist from such trespass, and that he is financially irresponsible. No objection to the equitable jurisdiction was raised.

Defendant answered by general denial. After a hearing, which involved determination of the true eastern boundary of plaintiff's property (which is also the western boundary of land owned or occupied by defendant), the court found for plaintiff, issued an injunction accordingly, and awarded plaintiff damages in the sum of $2,596, with costs. Defendant appeals.

The appeal, according to defendant's brief, raises the following questions:

■ Was the northern section corner common to plaintiff's land and land occupied by defendant a lost corner?

■ Was it proper, in locating the boundary line between plaintiff's and defendant's lands, to make use of the theory of proportionate measurement?

■ Did plaintiff, in surveying for the purpose of establishing such boundary line, commence its survey at the nearest authentic corner?

All references to numbered sections herein apply to such sections in township 4 north, range 5 west of the Willamette Meridian.

Error is predicated upon the refusal of the trial court to accept the so-called Mills bearing tree as evidencing the location of the true quarter corner between sections 3 and 10.

One T. B. Mills, about the year 1902, made a homestead filing upon the northeast quarter of section 10. As a witness for defendant, he testified that he lived upon his homestead three or four years, after which he relinquished it. Since then, he has not resided in that vicinity. In locating the boundaries of his homestead, he had the assistance of his two brothers. None of the party was a qualified surveyor. They ran a line from a corner common to sections 1 and 12 to a point which they took to be the northeast corner of section 9, a distance of "maybe two miles." Guided by the government field notes, they found near the quarter corner on the north line of section 10 a 70-inch fir tree which had the initials "B. T." marked on it, and near it a small alder tree which, Mills said, was supposed to be one of the tie-in trees. The fir bore evidence of having suffered damage from burning in an old fire, but it was still alive. It had been "chopped" (blazed?) on the south side. They measured from a point which they considered to be the northeast corner of section 10 to the bearing tree. He does not remember what monument was on such northeast corner, but thinks they found it "when going in there."

Mr. Mills testified further, in response to questions by the trial judge, that he had recently identified the same tree, but that he recognized it only by the contour

of the ground and the location of the tree from where his homestead cabin had stood.

Mr. R. B. Shefler, county engineer of Clatsop County, a witness for defendant, testified that he made a survey of the northern boundary of section 10. He identified a tree which he said was supposed to be one of the bearing trees for the original quarter corner between sections 3 and 10. He described it as a yellow fir 50 to 54 inches in diameter. It was badly burned; the bark and all the sapwood was gone. In his opinion, the tree might at one time have been as much as 26 inches larger. He was unable to find any evidences of an alder tree having been in the vicinity. There were no marks upon the fir bearing tree; it was badly burned. He gave it as his opinion that it was the quarter corner bearing tree described in the government field notes, basing his opinion upon the following reasons: The tree was described to him by Mills, whose homestead cabin had stood some seven or eight hundred feet on a line south of the tree; the tree was on a ridge, was the right size, and stood within 17 feet east and west and about 20 feet north and south of a point two miles west of the quarter corner between sections 1 and 12, which he considered to be a very close check for that sort of country in retracing a section line. He located the northwest corner of section 10 by chaining two and one-half miles west from a .corner "reputed to be good and verified by the presence of an old stump and a pipe and pointed out by various people as being a good corner on the bank of the Nehalem River," and accepted by him as representing the quarter corner between sections 1 and 12. In running this line, he claimed that he verified the quarter corner represented by the fir bearing tree.

Mr. John E. Eilertson, a registered engineer, former county surveyor and county engineer of Columbia County, testified for defendant. He said that T. B. Mills showed him "a certain bearing tree; a spar tree, and which is supposed to be the bearing tree by those people who have lived there in that neighborhood or in that area." He used this tree as the starting point of a survey. He would not say definitely that it evidenced the location of the quarter corner on the north boundary of section 10, but, from the distance between it and various creeks and brooks shown on prior surveys, it should be. The field notes called for a bearing tree 70 inches in diameter. The spar tree which he found was a large tree, but he didn't think it would go 70 inches. It had been burned severely. It had been used as a spar tree in logging operations. He located the northwest corner of section 10 by a post that had been placed by Mr. Shefler, but found no other markings evidencing the correctness of such location, although, on checking it against the government field notes, he "found it corresponded fairly good." He found no markings at the quarter corner between sections 9 and 10. He used a hand transit, and chained the distances, in making his survey. He would not say that the tree shown him by Mills was a bearing tree, although it was likely to be. It could have been, and the blazes could have been destroyed by fire. There were no marks on it that you could definitely identify. On cross-examination, he said that he did not know how Shefler set the stake (post) indicating the northwest corner of section 10; he hadn't talked to Shefler.

Mr. R. S. Lindsey, who formerly owned all of section 10 and homesteaded the southeast quarter thereof, testified for defendant. He said that his uncle, a home-

stead locator, had located for him the quarter corner between sections 10 and 11, which was evidenced by two marked bearing trees. This was about 1904. He knows the former location of these trees, but they no longer exist.

Plaintiff points out that the government field notes located the bearing tree between sections 3 and 10 as being between 4 and 5 chains east of the ridge, whereas the tree identified by Mills was west of the ridge; there is no evidence of the existence of an alder tree 8 inches in diameter which is called for as a tie-in by the government field notes, and which Mr. Mills testified to having observed when he filed on his homestead. On the contrary, there is evidence that a fir tree had stood at that point, such evidence being a fir stump crater three feet deep. The field notes placed the quarter corner between sections 3 and 10 at a point 5 chains east of the ridge, while the tree claimed by defendant as the bearing tree is approximately 350 feet west of the ridge. There are no marks on the tree identified by Mills indicating that it was ever a bearing tree. In the absence of more definite location, the proof that the tree in question was the actual bearing tree rests almost entirely upon the testimony of witness Mills, who saw it on one occasion only, and that approximately 48 years prior to the hearing.

> "A lost corner is a point of survey whose position can not be determined, beyond reasonable doubt, either from traces of the original marks or from acceptable evidence or testimony that bears upon the original position, and whose location can be restored only by reference to one or more interdependent corners." Rule 1020, Rules of the General Land Office entitled Restoration of Lost or Obliterated Corners, 1939.

■ ■ In establishing a lost corner, the unvarying rule is that the survey must start at the nearest "well-defined and unquestioned starting point on the original survey." Clark on Surveying and Boundaries, 2d ed, § 377; *Shaver v. Adams,* 37 Or 282, 286, 60 P 902; *Seabrook v. Coos Bay Ice Co.,* 49 Or 237, 242, 89 P 417; *Kincaid v. Peterson,* 135 Or. 619, 626, 297 P 833. We are of the opinion that the point from which Mr. Shefler's survey was initiated was not sufficiently identified as having been a "well-defined and unquestioned starting point on the original survey." Moreover, neither that point nor the quarter corner between sections 3 and 10, which was supposed to have been evidenced by the Mills bearing tree, was sufficiently proved, through "proper relation to known corners, the agreement with the field notes regarding distances to natural objects, stream crossings, line trees, and off-line tree blazes, etc., or unquestionable testimony." Rule 1019, General Land Office Rules, supra. We think that the court's refusal to accept the tree identified by Mr. Mills as an original bearing tree was not error.

In the restoration of lost or obliterated corners, it is frequently found that there is a discrepancy in the measurements between corners, as shown in the field notes of the original survey, and the actual measurements as found in the resurvey. As to this, Rule 1022, of the General Land Office, supra, states:

> "The ordinary field problem consists in distributing the excess or deficiency between two existent corners in such a manner that the amount given to each interval shall bear the same proportion to the whole difference as the record length of the interval bears to the whole record distance. After having applied the proportionate difference to the record length of each interval the sum of

the several parts will equal the new measurement of the whole distance.''

The method which is employed in distributing the excess or deficiency is known as ''proportionate measurement.'' It may be either single or double.

''The term 'single proportionate measurement' is applied to a new measurement made in a line to determine one or more positions on that line.'' Rule 1023, Rules, supra.

''The term 'double proportionate measurement' is applied to a new measurement made between four known corners, two each on intersecting meridional and latitudinal lines, for the purpose of relating the intersection to both.'' Rule 1024, Rules, supra.

■ Defendant contends that plaintiff failed to show that the present measurements between corners differed from those given in the government field notes, which, he says, plaintiff should have shown before being permitted to reestablish lost or obliterated corners by using proportionate measurement. Defendant claims that the section of our code above quoted is based upon the principle that, before the theory of proportionate measurement is applied, resort should be had to all available physical evidence.

Section 87-316, OCLA, provides as follows:

''In the resurvey of lands surveyed under the authority of the United States, the county surveyor shall observe the following rules, to wit: (1) Section and quarter-section corners, and all other corners established by the government survey, must stand as the true corners; (2) they must be reestablished at the identical spot where the original corner was located by the government survey, when this can be determined; (3) when this cannot be done, then said corners must be re-established according to the government field notes, adopting

proportionate measurements where the present measurements differ from those given in the field notes.''

Mr. H. Wm. Freed, a registered professional engineer, who is the engineer for the timber division of plaintiff corporation, testified for plaintiff. His testimony showed that he had diligently attempted to find physical evidences of the original corner monuments on the line between sections 9 and 10, and had been unable to find any. He said that the nearest existing original corners to the northeast corner of section 9, upon the latitudinal line, are, on the east, the northwest corner of section 12, and, on the west, the quarter section between sections 6 and 7. Similarly, the nearest existent corners to the southeast corner of section 9 are, on the east, the corner common to sections 11, 12, 13 and 14, and, on the west, the corner common to sections 8, 9, 16 and 17. He described with scrupulous exactness the manner in which he established those corners and checked them for correctness by existent original corners and other competent evidence. Without burdening this opinion with unnecessary detail, we state that Freed's evidence shows clearly that, based upon the location of the known corners above described, and by application of the principle of double proportionate measurement, he definitely located the boundary line between sections 9 and 10, which is the eastern boundary of plaintiff's land. Mr. Freed found by actual measurement that the distance between the two known corners upon the line which is the north boundary of sections 7, 8, 9, 10, 11 and 12, that is to say, between the quarter-corner between sections 6 and 7 and the northwest corner of section 12, is 22,280.2 feet. According to the field notes of the government survey, such dis-

tance is 357.28 chains, or 23,580.48 feet, a deficiency of 1,300.28 feet. This deficiency he distributed proportionately between the quarter-section intervals of the line between the existent original corners last mentioned. We are satisfied that the method employed by Mr. Freed in making his survey was reliable and in accordance with legal requirements, and that the line established by him as representing the east boundary of plaintiff's land is correct.

Having established the true eastern boundary of plaintiff's land, Mr. Freed proceeded to plot the area covered by defendant's trespass, and testified regarding the amount of timber logged by defendant thereon, both that removed and that left on the ground.

■ Defendant criticizes Mr. Freed's testimony as being that of an employee of plaintiff's. That is a matter which goes only to the weight of the evidence, and we have considered it in accepting the testimony as worthy of belief.

Defendant calls attention to the provisions of § 87-307, OCLA, as amended by chapter 459, Oregon Laws 1945. This section lays down the duties of county surveyors in respect of the making of surveys, the keeping of records, the establishment of monuments, and the location of corners of United States surveys. The following subdivisions are quoted in defendant's brief:

"Seventh. Establish all corners of government surveys, where the witness trees have been cut or have fallen down, and where there remains the stump or body on which the bearing marks, or blazes can still be seen, or where other evidences of the government corners may or can be found, whereby the said corners established by government survey can be positively located by any of such or other decaying evidences, said corner or

corners to be reestablished in the manner provided in this section for establishing corners, and shall keep a separate record of the same in a book called 'bearing-trees of United States surveys,' giving the date and names of persons present, and turn said record over to his successor. When so reestablished they shall be recognized thereafter as the legal and permanent corner or corners.

"Eighth. In counties lying west of the summit of the Cascade mountains, establish, upon order of the county court or board of county commissioners, all corners of government surveys where all physical evidence is destroyed or cannot be found, but where the official government notes are available, said corner or corners to be reestablished in the manner provided in this section for establishing corners, and shall keep a separate record of the same in a book called 'bearing-trees of United States surveys,' giving the date and names of persons present, and turn said record over to his successor. When so reestablished they shall be recognized thereafter as the legal and permanent corner or corners."

Based upon those subdivisions, defendant contends that the county surveyor, and he alone, may establish lost government corners. He insists that the foregoing statutory procedure for reestablishing lost corners is exclusive, and that the circuit court has no authority to make an order reestablishing the location of a lost corner without having before it evidence of a survey by the county surveyor. And he argues that the circuit court had no authority to adjudicate a claim of trespass upon real property which depended upon evidence of relocation of a lost corner otherwise than by the county surveyor. He asserts, in this connection, that there was a total failure of proof of the location of the section corner common to sections 3, 4, 9 and 10, and of the corner common to sections 9, 10, 15 and

16, and that without proof of the location of such corners, or of a quarter corner between sections 9 and 10, the location of the east boundary line of plaintiff's property was not proved.

■ Plaintiff concedes that there was no proof of the original location of the common corners above referred to, but rejects the suggestion that lack of such proof results in an absence of proof of the location of the boundary line. A section line runs between two established government corners. Under the law and the rules of the general land office, either of the corners in question might have been located in any one of two places, viz., (1) in its original location, if there is some acceptable evidence thereof; (2) by location with reference to one or more known corners. Plaintiff's surveyor followed those rules in making his survey. There is no merit in defendant's contention that no trespass could be proved unless the corners in question had been reestablished and the boundary line of plaintiff's property retraced by an official survey by the county surveyor. The statute does not provide either expressly or by implication that the county surveyor's survey should be the only competent evidence of the location of such corners or such boundary line. As a matter of fact, the law provides that a surveyor other than the county surveyor may testify to a survey made by him of property in controversy. § 87-306, OCLA. See *Cody v. Black,* 97 Or 343, 348, 191 P 319, 192 P 282; and *Sommer v. Compton,* 52 Or 173, 175, 96 P 124, 1065. In the Cody case, this court said:

"* * * In this instance the only difference between him [the private surveyor] and the county surveyor is that the latter may make a record which, if it conforms to the statute, may be introduced in evidence without its author's being called as a witness, while the private surveyor must personally

testify. But that record is neither conclusive nor exclusive. * * *''

And again, page 349:

"Given known government corners, any accurate measurement based upon them may be testified to by competent witnesses in aid of the court or jury in ascertaining the ultimate fact in issue. That the survey of the county surveyor is not conclusive is plain, for the reason that the statute recognizes a survey made by two competent surveyors, or one made by consent of the parties. Besides this, it does not exclude the oral testimony of any competent witness who knows facts material to the inquiry. * * *''

■ Defendant maintains that the matter is covered by the legal principle that, where a statute provides a new right or cause of action where none existed before and an adequate remedy for the enforcement of such right, the remedy so provided is exclusive, citing 50 Am Jur, Statutes, § 596, and 8 Am Jur, Boundaries, § 87. The legal principle asserted is illustrated by the Oregon cases of *Multnomah County v. Knott,* 6 Or 279, 280, and *State v. Amsden,* 86 Or 55, 58, 166 P 942, 167 P 1014. It is not applicable to the situation under discussion. The authority given by the statute to the county surveyor to reestablish lost corners of the government survey is not, in our opinion, the creation of a new right or cause of action in the sense in which the principle involved uses these expressions.

Section 87-321, OCLA, provides for the permanent establishment of private corners and boundaries by the county surveyor upon the request of the owner or owners of one or more tracts of land. That section and the two next succeeding lay down the procedure to be followed by the county surveyor in such cases. In

*Egan v. Finney,* 42 Or 599, 603, 72 P 133, it was held that such statutory provisions are applicable only in cases where the location of the boundary of real property is doubtful, disputed, or uncertain. In the case at bar neither of the parties requested the county surveyor to establish the boundary. No doubt either of them might have done so. The statute, however, certainly did not deprive plaintiff of the right to have a survey made by a private surveyor in order to establish the boundaries of its land. In *Egan v. Finney,* supra, this court said that a party cannot be "deprived of his right to a trial in the circuit court of an issue concerning the boundary to his real property * * *," and, as stated, § 87-306, OCLA, confirms the right of such a party to use the testimony of a private surveyor in such cases.

Finally, defendant argues that, in an action for trespass upon real property, when the plaintiff contends that the physical evidence of the original location of a section corner upon which the fact and extent of the trespass depend has been lost, and attempts to determine and reestablish the location of such corner by the testimony of his own employees upon the theory of proportional measurement rather than by the reestablishment of the original corner and line, the court may not find the defendant guilty of trespass, if, prior to the relocation of such line, he did not cut timber beyond a line claimed by him to be the original section line, of which line plaintiff had knowledge, and concerning which there was no dispute, since, until such new line was established by law, there could be no trespass over it.

■ The argument is rather involved, but, in any event, it does not appear to be in point. There was no evidence in the case that, prior to the trespass, defend-

ant had claimed any particular line to be the original section line, or that plaintiff ever had notice of any such claim. Moreover, as we have stated, there was no evidence that defendant made any effort to locate the boundary line prior to the trespass. The suggestion that until a new line was established by law the defendant could not be guilty of trespass over such line cannot be accepted. There was at all times a boundary line between the lands of plaintiff and those of defendant. Its exact location may not have been susceptible of determination from existing physical evidences at the time of the trespass, but at all times the location could have been reestablished by survey.

It was defendant's duty to have determined in advance the exact location of his boundary line. There is no evidence that he made any attempt whatever to do so until after his cutting of timber upon plaintiff's land had been called in question. This fact tends rather to aggravate the trespass than to excuse it.

We find no error in the record. The decree of the trial court is affirmed, with costs.