### DEAL et al. v. UNITED STATES. [*]

(Circuit Court of Appeals, Ninth Circuit. February 15, 1926. Rehearing Denied March 22, 1926.)

#### No. 4631.

**1. Post office ⬤⇒7(2)—Complaint in action on postmaster's bond for loss by theft of government money from registered mail held sufficient as against general demurrer.**

In action on postmaster's bond for loss by theft of government money from registered package, complaint alleging that loss was due to postmaster's negligence and disregard of postal laws and regulations, in failing to use ordinary care to protect package, though subject to motion to make more definite, *held* sufficient as against general demurrer.

**2. Negligence ⬤⇒108(2)—General averment of negligence sufficient.**

It is sufficient in declaration for negligence to specify particular act causing injury with general averment that it was negligently done or omitted without specifying facts relied on.

**3. Post office ⬤⇒7(1)—Statute requiring postmasters to safely keep government money collected by them or in their possession held not applicable to money in registered package (Rev. St. § 3846 [Comp. St. § 7208]).**

Rev. St. § 3846 (Comp. St. § 7208), requiring postmasters to safely keep public money collected by them or in their possession, applies only to money which, as such, comes into their possession, and not to government money in sealed package sent through mail.

**4. Evidence ⬤⇒47.**

It is courts' duty to take judicial notice of regulations of Post Office Department promulgated under Act Aug. 24, 1912.

[*]Certiorari granted 46 S. Ct. 630, 70 L. Ed. ——.

**5. Post office ⬡⟹7(1)—Postmaster held chargeable with notice of his responsibility for money stolen in post office robbery.**

Postmaster is chargeable with notice of his responsibility, under regulations of Post Office Department charging postmaster with responsibility for money stolen in post office robbery, if he fails to exercise due care in protecting it; bond requiring him faithfully to discharge all duties and trusts imposed by law and departmental regulations.

**6. Post office ⬡⟹7(1)—Postmaster is responsible as bailee charged with high degree of care.**

General responsibility of postmaster is that of bailee charged with high degree of care.

**7. Post office ⬡⟹7(1)—Postmaster, not using due care to protect registered mail, is absolutely responsible for money stolen in post office robbery, regardless of causal connection (Act Aug. 24, 1912, c. 389, 37 Stat. 541).**

Under regulations of Post Office Department promulgated under Act Aug. 24, 1912, postmaster is absolutely responsible for money stolen in post office robbery, if he fails to exercise due care to protect such property, and government need not show that his want of care was proximate cause of loss.

**8. Post office ⬡⟹7(1)—Regulation defining postmaster's liability in case of loss of registered letters from negligent misdelivery held not in conflict with regulation imposing absolute responsibility for loss in post office robbery.**

Post Office Department regulation, defining postmaster's responsibility for misdelivery, depredation on, or loss of, registered mail, from negligence or disregard of regulations, *held* not to conflict with regulation imposing absolute responsibility for loss in post office robbery, if postmaster did not use due care, regardless of causal connection.

**9. Post office ⬡⟹7(2)—In action on postmaster's bond, evidence held sufficient to take case to jury.**

In action on postmaster's bond, evidence that registered mail package containing government money was rifled, and that postmaster violated regulations defining his duty to protect such property, *held* sufficient to take case to jury.

**10. Appeal and error ⬡⟹1033(5)—In action on postmaster's bond for loss of government money in registered mail package, instruction held more favorable to defendants than they were entitled to have.**

In action on postmaster's bond for loss, by theft, of government money from registered mail package, instruction directing verdict for plaintiff, if loss occurred, and postmaster failed to use full combination in locking safe, and otherwise requiring finding for defendants, *held* more favorable than defendants were entitled to.

**11. Post office ⬡⟹7(1)—Postmaster is not insurer of registered mail under his control.**

Postmaster is not insurer of registered mail under his control.

**12. Appeal and error ⬡⟹1170(9)—Instruction making postmaster insurer of mail, though erroneous, held not prejudicial (Act Feb. 26, 1919 [Comp. St. Ann. Supp. 1919, § 1246]).**

In action on postmaster's bond for loss of government's money in registered package, instruction directing verdict for plaintiff, if package was rifled in defendant's post office, though erroneous as making postmaster liable as insurer, was not prejudicial, where evidence of violation of regulations was uncontradicted and violations admitted, and did not require reversal under Act Feb. 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246).

**13. Post office ⬡⟹7(2)—Admission of evidence that there were magazines, similar to one substituted for money in registered package, and nails similar to one used in repacking it, in defendant's post office, held not error.**

In action on postmaster's bond for loss of government money from registered package, *held*, that it was within trial court's discretion to admit evidence that similar magazines to one substituted for money in package and nails similar to one used by thief in repacking it were in defendant's post office.

**14. Post office ⬡⟹7(2)—In action on postmaster's bond, reading into record of departmental regulations defining postmaster's duty held not error.**

In action on postmaster's bond, it was not error to permit reading into record of regulations of Post Office Department, including regulations not mentioned in complaint, defining postmaster's duties, obedience to which was guaranteed by bond.

**15. Evidence ⬡⟹151(4)—In action on postmaster's bond, testimony of register clerk that she believed registered package contained money held admissible to determine care package should receive.**

In action on postmaster's bond for loss of government money from registered package, *held*, that testimony of register clerk that she believed package contained money was material in determining care package should receive; postmaster being responsible for such clerk's acts and omissions.

**16. Costs ⬡⟹185—Mileage is taxable as costs only for such distance as is necessarily traveled by witness from place to which subpœna will run.**

Mileage is taxable as costs only for such distance as is necessarily traveled by witness from place to which subpœna will run.

**17. Witnesses ⬡⟹24—Witness living more than 100 miles from place of trial, held entitled to mileage and per diem, regardless of whether order requiring his attendance is indorsed on subpœna (Comp. Laws Alaska, § 1462).**

Under Comp. Laws Alaska, § 1462, witness residing more than 100 miles from place of trial, who attends, is entitled to his mileage and per diem, though order requiring his attendance was not indorsed on subpœna, as subpœna runs to any point in territory.

18. Costs ⊛184(10)—Witnesses' per diem limited to days of attendance at trial and not taxable for time spent in coming and going (Comp. Laws Alaska, § 1462).

Under Comp. Laws Alaska, § 1462, witnesses' per diem is limited to days in attendance at place of trial, and is not taxable for time spent in coming and going.

19. Costs ⊛186—Necessary costs of deputy United States marshal in going to and returning from attendance at court as witness held taxable as costs.

Deputy United States marshal, under salary, who traveled on pass in attending trial as witness, was entitled to his necessary expenses in going and returning, and such expenses were taxable as costs.

In Error to the District Court of the United States for the Fourth Division of the Territory of Alaska; Cecil H. Clegg, Judge.

Action by the United States against T. H. Deal and another. Judgment for the United States, and defendants bring error. Affirmed in part, and reversed in part.

This is an action on a bond executed by plaintiffs in error, hereinafter referred to as the defendants. The bond was given to secure the faithful performance by the defendant Deal of his duties as postmaster at Fairbanks, Alaska. It is charged that the bond was breached by the loss of $9,900 stolen from a package of registered mail while in his custody. Judgment was entered on a verdict for plaintiff, and defendants have sued out this writ of error.

R. F. Roth, of Fairbanks, Alaska, for plaintiff in error Deal.

John A. Clark, of Fairbanks, Alaska, and Thomas, Beedy & Presley, of San Francisco, Cal., for plaintiff in error Guaranty Co.

Julien A. Hurley, U. S. Atty., and Earnest B. Collins, Asst. U. S. Atty., both of Fairbanks, Alaska.

Before HUNT, RUDKIN, and McCAMANT, Circuit Judges.

McCAMANT, Circuit Judge. [1] It is contended that the complaint on which the case was tried fails to state facts sufficient to constitute a cause of action. It is alleged that the defendant Deal was postmaster at Fairbanks at the time in question; that the defendants executed to plaintiff a bond in the sum of $26,000, conditioned that the defendant Deal "should faithfully discharge all the faiths and trusts imposed on him as such postmaster either by laws or the regulations of the Post Office Department of the United States"; that on the 15th of September, 1921, the First National Bank of Fairbanks deposited in the post office at that place a parcel containing $9,937.65 belonging to the United States; that the parcel was addressed to the special disbursing officer of the Alaskan Engineering Commission at Healy, Alaska, by way of Nenana, and that it was duly stamped and registered; that, while the parcel was in the custody of the defendant Deal, it was opened and rifled of $9,900;. that this loss was due to the negligence of the defendant Deal and his disregard of the postal laws and regulations; that said defendant "failed and neglected to use ordinary care in handling the said registered package, and failed and neglected to properly protect and safeguard the said registered package as registered mail matter, and failed and neglected to handle said registered package in the manner prescribed by law and the regulations of the Post Office Department, and handled the same in a careless and negligent manner, and in utter disregard of the law and the said regulations aforesaid, particularly of sections 361, 524, 940, and 1015 of the regulations of said Post Office Department promulgated in 1913; that by reason of the premises plaintiff sustained a loss of $9,900."

The complaint is not a model pleading, and we think certain specifications of defendants' motion to make more definite should have been allowed, but it is conceded that the action of the lower court in this respect is not reviewable here. The breach of the bond is sufficiently alleged within the rule declared in 9 C. J. 101; Guy v. McDaniel, 29 S. E. 196, 197, 51 S. C. 436; People ex rel. v. Lee, 32 N. W. 817, 820, 65 Mich. 557. [2] The facts with reference to the care taken of the package were within the knowledge of the defendant Deal. "It is sufficient, in a declaration upon negligence, to specify the particular act, the commission or omission of which caused the injury, conjoining with it a general averment that it was negligently * * * done, or omitted, and that it is unnecessary to go further, and particularize or point out the specific facts going to establish the negligence relied upon." Chaperon v. Portland Electric Co., 67 P. 928, 929, 41 Or. 39, 42. The complaint was not obnoxious to a general demurrer.

The defendants moved for a nonsuit, and also for a directed verdict. Error is assigned on the denial of these motions. The government introduced evidence from which the jury was warranted in finding that on the 15th of September, 1921, the First National Bank of Fairbanks deposited at the Fairbanks post office a package containing $9,900

in currency and $37.65 in silver, addressed to Frank Doner, Healy via Nenana, Alaska; that the money was government property, and was sent to Doner as disbursing agent for Alaskan Engineering Commission; that the package was registered, and believed by the clerk who received it to contain money; that it remained overnight in the Fairbanks post office, and left early in the morning of September 16th by rail for Nenana; that on leaving the post office it was contained in a locked mail sack which was still locked and intact when it reached Nenana. The sack was opened at Nenana, and the condition of the package indicated that it had been tampered with. On investigation it developed that the currency had been removed and a magazine substituted. It appeared that the sack from which the currency was abstracted had been fastened with a nail, and that other nails of the same type were found in the Fairbanks post office; also that there was a stack of magazines there from which the magazine in the mutilated package might have been taken. Section 361 of the Postal Regulations in force at the time contains the following language:

"Where stamps and funds are kept in iron safes with 'combination locks,' such safes shall be carefully and completely locked at night or when the office is left without occupants. No credit will be allowed for losses from safes fastened only with what is termed a 'day lock' or 'day combination.'

"A postmaster upon taking charge of his office shall immediately change the combination on every safe therein; and where at any time a safe is procured, either new or second-hand, he shall immediately change the combination. Failure to make such change shall be considered as prima facie evidence of contributory negligence on the part of the postmaster in any case where claim is made for credit for money or other property stolen from such safes which have been opened without resort to violence."

It appeared that the defendant Deal had not conformed to the above requirements. He did not change the combination on the safe which was in use, and on the night of September 15th the safe was fastened only with a day lock. The package in question was in this safe during that night. Section 524 of the regulations is as follows:

"Postmasters shall not permit any persons except duly sworn assistants, clerks, letter carriers, and post office inspectors or other authorized representatives of the department to have access to any mail matter in the post office. This prohibition extends especially to mail contractors and their drivers.

"Mails should not be made up or handled within reach of unauthorized persons, and such persons should be excluded from the room appropriated to the use of the post office while the mails are being opened or made up." The evidence showed that the defendant Deal violated this section also. There was further evidence that other regulations were disregarded by the postmaster at the time the package was in his custody.

The defendants challenge the sufficiency of the evidence on the ground that it does not appear that the rifling of the package resulted from the failure of the postmaster to conform to the regulations. We will assume, without deciding, that the evidence was insufficient to justify the jury in finding that the postmaster's failure to comply with the regulations proximately contributed to the loss of the currency.

[3] The government contends that the liability of the defendants is established by proof that the package contained money belonging to the United States, and that this money was stolen while in the custody of the postmaster. It is contended that the case falls within the operation of section 3846, R. S. (section 7208, Comp. St.), which is as follows:

"Postmasters shall keep safely, without loaning, using, depositing in an unauthorized bank, or exchanging for other funds, all the public money collected by them, or which may come into their possession, until it is ordered by the Postmaster General to be transferred or paid out." We are unable to agree with this contention. This statute has never been construed by any court as applicable to government money contained in a sealed package sent through the mail. It was certainly not the intention of Congress that such money should be kept by a postmaster "until it is ordered by the Postmaster General to be transferred or paid out." We think the above section is applicable only to money which, as such, comes into the possession of the postmaster.

[4, 5] The government also relies on section 291 of the regulations, which is in part as follows:

"When a post office has been robbed, the postmaster shall immediately report all the facts to the chief inspector and to the post office inspector in charge of the division in which the post office is located. * * * The report should give, if possible, all the circumstances connected with the robbery, the date, a detailed inventory of the loss, the denom-

inations of stamped paper stolen, the amount of postal and money-order funds and of each class of government property. The postmaster shall be held responsible for the loss if he fails to exercise due care in the protection of the property."

· This section is not mentioned in the complaint, nor was it offered in evidence. It is, however, a part of the regulations published by the department in 1913 and a copy of which was in the possession of the defendant Deal. Prior to 1912 there were a number of statutes authorizing postal regulations, and by Act of Congress of August 24, 1912, a revised edition of the regulations was authorized (37 Statutes 541). The section above quoted is found in the edition so authorized. It is the duty of the courts to take judicial notice of these regulations. Caha v. U. S., 14 S. Ct. 513, 152 U. S. 211, 222, 38 L. Ed. 415.

The above section charges the postmaster with responsibility for money stolen in a post office robbery, "if he fails to exercise due care in the protection of the property." The property referred to is the property stolen, and the words "due care" are referable to the standard of care prescribed by other regulations. It is often difficult to determine whether negligence of the postmaster has contributed to a loss of mail stolen from a post office. The postal authorities have seen fit to charge the postmaster with absolute responsibility if he has neglected the care prescribed by the regulations. The defendant Deal was chargeable with notice of this responsibility when he qualified as postmaster on the 19th of November, 1918. The condition of the bond executed by defendants was that "the said Thomas H. Deal shall faithfully discharge all duties and trusts imposed on him as postmaster either by law or by the regulations of the Post Office Department." One of the duties imposed upon him was to make good any loss by robbery, if he should fail to exercise due care in the protection of the property stolen.

[6-8] The defendants contend that the responsibility of postmasters in handling registered mail is determined by section 940 of the regulations, which is as follows:

"Postmasters and other postal employees will be held personally responsible by the Post Office Department for the wrong delivery, depredation upon, or loss of any registered letter or parcel if such wrong delivery, depredation, or loss be due to negligence or disregard of the regulations."

There is no conflict between sections 291 and 940. The latter defines the general responsibility of postmasters and the former their responsibility when post offices are robbed. The general responsibility of a postmaster is that of a bailee charged with a high degree of care. United States v. Rogde (D. C.) 214 F. 283, 295. If his post office is robbed, and he has failed to exercise due care of the stolen property, he is responsible absolutely, and it is not necessary for the government to show that his want of care was the proximate cause of the loss.

[9] The evidence warranted a finding by the jury that the parcel was rifled in the Fairbanks post office, and that the defendant Deal in his care of the parcel had violated the regulations defining his duty with reference thereto. This was sufficient to take the case to the jury.

[10] There are 77 assignments of error. To notice them all in this opinion is impossible. We can only state the principles of law which control the determination of the case and pass on the assignments of error most insisted upon. The twenty-fourth instruction to the jury was as follows:

"You are instructed that, if you find and believe from a preponderance of the evidence in the case that a loss of $9,900 occurred to the plaintiff herein in the post office at Fairbanks, Alaska, and that the defendant Deal failed to fully lock the safe in which was contained the registered package in controversy during the night of September 15, 1921, and morning of September 16, 1921, and that he did not use the full combination thereof for the purpose of locking it at said time, you should return a verdict for the plaintiff, otherwise your verdict should be for defendants."

This instruction was more favorable to the defendants than they were entitled to. For reasons already pointed out, plaintiff was entitled to a verdict if the jury found the facts to be as stated in the instruction. The defendants, however, were not necessarily entitled to a verdict if the jury failed to find the facts to be as so stated.

Similar instructions were given with reference to the other respects in which the evidence tended to show that the defendant Deal had violated the regulations with reference to his care of the package. These instructions were more than fair to the defendants.

[11, 12] The twenty-second instruction was as follows:

"In this connection you are instructed that, if you find and believe from a preponderance of all the evidence in the case that the defendant Deal knew that the registered package in controversy contained money,

and that said money was the property of the United States, and that the said registered package was looted and rifled of $9,900 in currency while it was in his * * * care and custody and control in the United States post office at Fairbanks, and that when the said registered package was dispatched from the said post office it had the bottom thereof torn open and fastened temporarily with an eight-penny or ten-penny finishing nail, and the sum of $9,900 which it formerly contained had been abstracted and removed therefrom, and it then contained only $37.65 of the money which it had contained at the time it was delivered into the post office by the First National Bank, if you find from a preponderance of the evidence it was so delivered, and that at the time the said registered package left the said post office in the registry pouch it contained only $37.65 in silver, and a copy of the Popular Mechanics magazine, and a finishing nail holding the cut portions of the sack together, and that thereby the plaintiff herein sustained a loss of $9,-900, and that the plaintiff has demanded from the defendants and each of them the payment of said sum of $9,900, and that they, and each of them, have refused to pay the same, then I instruct you that you should return a verdict for the plaintiff; otherwise your verdict should be for the defendants." This instruction contains no reference to the regulations whose violation was charged. It holds the postmaster liable as an insurer, and directs a verdict for plaintiff in case the jury finds that the package was rifled while in the Fairbanks post office. The postmaster is not an insurer of the registered mail under his control. United States v. Rogde (D. C.) 214 F. 283. If there were any controversy about the postmaster's violation of the regulations, this instruction would require the reversal of the judgment. The testimony with reference to these violations is uncontradicted, and the violations are expressly admitted in defendants' brief. The instruction was therefore error without prejudice. Such error does not call for reversal. Section 1246, Comp. St. Ann. Supp. 1919, 40 Statutes 1181.

[13, 14] It was within the discretion of the trial court to admit evidence that there were in the Fairbanks post office nails and magazines similar to those used by the thief in repacking the rifled package. The court did not err in permitting the witness Neil to read into the record extracts from the regulations of 1913 and the Postal Guide of 1914, including regulations and instructions not mentioned in the complaint. These publications defined the duties of the postmaster, obedience to which was guaranteed by the bond.

[15] The court properly denied the motion of defendants to strike out the testimony of Evalyn Houck, the register clerk in the post office, that she believed the package contained money. This belief was material in determining the care that the package should receive. The defendant Deal was responsible for Miss Houck's acts and omissions. United States v. Barker, 100 F. 34, 39, 40 C. C. A. 264.

It is unnecessary to prolong this opinion by reviewing the other errors assigned. We have examined them all. There are inaccuracies in the instructions, but we do not find that they prejudiced the defendants. The court fairly submitted to the jury the question of whether the package was rifled in the Fairbanks post office. The verdict for plaintiff concludes the defendants on this question. The concession that the regulations relevant to the care of this package were violated is all that is additionally required to spell the liability of the defendants.

[16, 17] There is a further controversy growing out of the settlement of the cost bill. Section 1462 of the Compiled Laws of Alaska is as follows:

"A witness is not obliged to attend for oral examination or otherwise at a place distant more than one hundred miles from the place where he resides or at which he may be served with a subpœna; except that, in an action or proceeding pending in a court of record the court or judge thereof, upon the affidavit of the party, or someone on his behalf, showing that the testimony of the witness is material and his oral examination important and desirable, may indorse upon the subpœna an order for the attendance of the witness; the service of such subpœna and order and the payment of legal fees to the witness are sufficient to require his attendance, if he be served within the district."

[18] Certain witnesses for plaintiff were subpœnaed at places within the district more than 100 miles distant from the place of trial. No affidavit was filed as required by the above statute. Defendants contend that no mileage can be taxed in excess of 200 miles. The weight of authority in the federal courts supports the rule that mileage is recoverable only for such distance as is necessarily traveled by a witness from a place to which a subpœna will run. United States v. Southern Pacific Co. (C. C.) 172 F. 909; United States v. Southern Pacific Co. (D. C.) 230 F. 270; Kirby v. United States (C. C. A.) 273 F. 391. A subpœna will run to any point in

the territory. The effect of section 1462, supra, is to relieve the witness from the burden of attending, unless the subpœna is indorsed as provided therein. This section of the statute is doubtless taken from section 818, Oregon Laws. The Oregon statute has been construed by the Supreme Court of that state in Egan v. Finney, 72 P. 133, 42 Or. 599, 606, and Kohlhagen v. Cardwell, 184 P. 261, 93 Or. 610, 620–622, 8 A. L. R. 11. It is held that the adverse party is not entitled to complain of the failure to indorse on the subpœna an order requiring the attendance of the witness. If he attends, he is entitled to his mileage and per diem. We think that this construction of the statute is correct, and that defendants' exceptions to the mileage taxed were properly denied. The per diem is limited to the days the witnesses were in attendance at the place of trial. The per diem is not taxable for the time spent in coming and going. 15 C. J. 133. In this last respect defendants' exceptions are well taken. [19] James Hagan, a witness for plaintiff, was a deputy United States marshal under salary. He traveled on a pass on the government railroad in attending the trial. Under the rule announced in United States v. Southern Pacific Co. (C. C.) 172 F. 909, 912, he was entitled to his necessary expenses in going to, returning from, and attendance on, the court. These expenses are taxable as costs. The witness fees of Hagan should be retaxed, and the per diem of the witnesses Keller, Fairborn, Doner, Bentley, Williams, Wrangstedt, and Raeburn should be limited to the period of their attendance at the place of trial.

The judgment for costs is reversed, with directions to retax in accordance with the above conclusions. In other respects the judgment is affirmed.